**2020 WI App 80**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.: 2019AP2205

Complete Title of Case:

        **LOREN IMHOFF HOMEBUILDER, INC.,**

          **PETITIONER-APPELLANT,**

         **V.**

        **LISA TAYLOR AND LUIS CUEVAS,**

          **RESPONDENTS-RESPONDENTS.**

| | |
|---|---|
| Opinion Filed: | November 5, 2020 |
| Submitted on Briefs: | August 20, 2020 |

| | |
|---|---|
| JUDGES: | Blanchard, Kloppenburg, and Graham, JJ. |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Paul W. Schwarzenbart* and *Jeffrey W. Younger* of *Stafford Rosenbaum LLP*, Madison. |
| Respondent<br>ATTORNEYS: | On behalf of the respondents-respondents, the cause was submitted on the brief of *Lisa Taylor* and *Luis Cuevas*, pro se. |

## COURT OF APPEALS
## DECISION
## DATED AND FILED

### November 5, 2020

Sheila T. Reiff
Clerk of Court of Appeals

### NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| | |
|---|---|
| **Appeal No.  2019AP2205** | Cir. Ct. No. 2016CV3177 |
| **STATE OF WISCONSIN** | **IN COURT OF APPEALS** |

LOREN IMHOFF HOMEBUILDER, INC.,

PETITIONER-APPELLANT,

V.

LISA TAYLOR AND LUIS CUEVAS,

RESPONDENTS-RESPONDENTS.

APPEAL from an order of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Reversed and cause remanded with directions*.

Before Blanchard, Kloppenburg, and Graham, JJ.

¶1 BLANCHARD, J. Lisa Taylor and Luis Cuevas (the homeowners) entered into a construction contract with Loren Imhoff Homebuilder, Inc. (the builder) for a remodeling project. The project bogged down in disputes. The disputes went into mediation and then into arbitration before a single arbitrator.

The parties participated in an evidentiary hearing before the arbitrator. The arbitrator's decision resulted in a net award in favor of the builder, but each side prevailed on some issues.

¶2      The homeowners moved the circuit court to vacate the arbitration award on multiple grounds. The court rejected all but one. The court accepted the homeowners' argument that the arbitrator fell asleep at some point or points during the evidentiary hearing and that as a result he "so imperfectly executed [his powers as arbitrator] that a mutual, final and definite award upon the subject matter submitted was not made." *See* WIS. STAT. § 788.10(1)(d) (2017-18) (including such "imperfect execut[ion]" as one ground on which a circuit court must vacate an arbitration award).[1]  The builder appeals.

¶3      We conclude that the homeowners forfeited the claim that the circuit court should vacate the award based on the momentary drowsiness or sleeping that they ended up alleging in court because they failed to ask the arbitrator to resolve any problems caused by alleged momentary drowsiness or sleeping. Accordingly, we reverse the order vacating the arbitration award and direct the circuit court to confirm it.

## BACKGROUND

¶4      The building construction contract between the homeowners and the builder included provisions addressing dispute resolution, such as eventual recourse to binding arbitration. After the disputes arose, the builder commenced

---

[1] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

this action by filing a petition in the circuit court to compel arbitration. The circuit court granted the petition.[2] The parties selected a mediator-arbitrator (the arbitrator). The arbitrator made unsuccessful mediation attempts on two days in fall 2017 and then conducted a five-day evidentiary arbitration hearing in February, March, and July 2018, before issuing a decision in September 2018.

¶5    The issue we resolve on appeal does not require us to delve into the details of the arbitration. In broad strokes, the builder claimed unpaid contract amounts—including payments on a quantum meruit basis for work requested outside the contract—and the homeowners made claims for offsetting damages based on alleged construction defects. Both sides were represented by counsel during the arbitration hearing. The parties filed post-hearing briefs on the merits with the arbitrator.

¶6    As the parties awaited the arbitration decision, the homeowners asked the arbitrator to recuse himself, primarily based on allegations of bias. We address pertinent details of the homeowners' post-hearing recusal request in the Discussion section below. Included in the recusal request were assertions that the arbitrator had exhibited drowsiness or sleeping during the hearing. The builder disputed that the arbitrator had exhibited drowsiness or sleeping. In addition, the builder objected that the homeowners had waited too long to raise the issue.

---

[2] The Honorable Valerie L. Bailey-Rihn entered the order granting the petition for arbitration and the Honorable Frank D. Remington rendered all rulings at issue on appeal. The homeowners do not clearly raise any issue in this appeal regarding the order granting the petition to compel arbitration, any aspect of the process used to select the arbitrator, or any method used by the arbitrator to gather information and render a decision, save the alleged drowsiness or sleeping issue.

¶7      Notably, the homeowners' request that the arbitrator recuse himself did not include an allegation that the arbitrator had missed any specific evidence or argument.  The request also did not note any particular occasion on which the homeowners had allegedly attempted to rouse him.  Further, the homeowners did not ask the arbitrator for the opportunity to resubmit evidence or reargue any specific point that they alleged he had missed.  As we discuss in more detail below, the arbitrator rejected the recusal request.

¶8      Shortly after denying the recusal request, the arbitrator issued a written decision on the merits.[3]  The decision did not include any reference to alleged drowsiness or sleeping.

¶9      In this circuit court action, the homeowners moved to vacate the award.  The only ground in the motion that the homeowners have not now abandoned on appeal was a claim that the circuit court "must" vacate the award under WIS. STAT. § 788.10(1)(d) because, due to drowsiness or sleeping during the hearing, the arbitrator "so imperfectly executed [his powers as an arbitrator] that a mutual, final and definite award upon the subject matter submitted was not made."

¶10     The circuit court took sworn testimony from the homeowners and the builder's attorney regarding their perceptions of any drowsiness or sleeping by the arbitrator during the arbitration hearing.  Taylor testified that, at least once on each day of the hearing but without specification as to how many times, the

---

[3] The details of the decision do not matter to the forfeiture issue that we consider dispositive, but for general context we note that the award required the homeowners to pay the builder $255,748.89.  This was based in part on determinations that the homeowners had shown $16,243.79 in offsetting damages and that a reduction of $3,571 as a sanction against the builder for missing a scheduled home inspection was merited.

4

arbitrator showed signs of drowsiness or being asleep. In contrast, the builder's attorney testified that the arbitrator did not appear drowsy or sleepy at the hearing but instead took an active role in asking questions and taking notes, and that he was "fully engaged the entire time."

¶11 The homeowners acknowledged in the circuit court that during the hearing they never raised with the arbitrator an objection or even a concern involving alleged drowsiness or sleeping. More specifically, they acknowledged that they never suggested that he appeared to have missed particular evidence or argument that could have prejudiced them. To the contrary, the homeowners' position in the circuit court was that they made a tactical decision at the arbitration hearing *not* to raise the issue with him. Instead, they alleged, "there were a few times when [homeowner Taylor] literally tried to show [the arbitrator] something to wake him up," and "a couple of times … [Taylor] kind of did something on the table to kind of make some noise to bring him to." They said that they tried "to be subtle about it" and "proceeded with caution," because they suspected that the arbitrator was inclined to rule against them, and "it's not going to make it any better … [to] tell him[,] you're sleeping too."

¶12 The builder argued in pertinent part that the homeowners had forfeited the sleeping claim by failing to raise it during the arbitration.

¶13 The circuit court ruled that the homeowners had met their "burden of proof to establish by clear and convincing evidence that [the arbitrator's] drowsiness or sleepiness" caused the arbitrator to "so imperfectly execute[] his powers that the award upon the subject matter submitted was not made." *See* WIS. STAT. § 788.10(1)(d). The court stated, "I don't know if [the arbitrator] was sleeping or not." Nevertheless, the court found that there was clear and

convincing evidence that the arbitrator had rejected the homeowners' expert's testimony, not on the merits, but instead because he had missed portions of the testimony due to drowsiness or sleeping. The court appeared to rely on some combination of the homeowners' testimony in court and various allegations that they had made in post-arbitration hearing submissions to the arbitrator, as well as the court's perception that neither the builder nor the arbitrator had denied material drowsiness or sleeping after the homeowners raised the issue in their post-hearing recusal request. The court rejected the homeowners' other arguments in favor of vacating the award. It subsequently ruled that the homeowners had not forfeited the drowsiness or sleeping claim and that they had shown resulting prejudice. Based on these rulings, the court denied the builder's motion to confirm the award, granted the homeowners' motion to vacate it, and remanded for the parties to begin arbitration anew before a different arbitrator. The builder appeals.

## DISCUSSION

¶14     Based on the record and assuming as true the factual allegations that the homeowners made to the circuit court, we conclude that the homeowners forfeited drowsiness or sleeping by the arbitrator as a basis to vacate the award. The homeowners failed to raise the issue at any point during the arbitration hearing. After the hearing, they failed to voice an objection requesting that the arbitrator consider any particular evidence or argument that he allegedly missed. Instead, they requested that the arbitrator recuse himself, primarily based on allegations of bias, making only generalized references to drowsiness or sleeping. They did not ask the arbitrator to fix any problems allegedly caused by dozing or sleeping. For these reasons, as we explain further below, the circuit court erroneously exercised its discretion in rejecting the builder's well-supported forfeiture argument.

6

¶15 Because we resolve this appeal based on the homeowners' forfeiture, we need not reach the statutory and common law standards that guide courts in addressing a request to vacate an arbitration award. *See **Baldwin-Woodville Area Sch. Dist. v. West Cent. Educ. Ass'n-Baldwin Woodville Unit***, 2009 WI 51, ¶20, 317 Wis. 2d 691, 766 N.W.2d 591 (referencing the statutory standards in WIS. STAT. §§ 788.10 and 788.11 and "the standards developed at common law," which guide courts in their review of arbitration awards). We limit our analysis to the facts alleged by the homeowners bearing on the forfeiture issue, because the homeowners have not cross appealed the circuit court's rejection of their other challenges to the decision.[4]

---

[4] For example, we do not address the builder's argument that the circuit court properly determined that the homeowners failed to show that the award should be vacated based on alleged arbitrator bias. To the extent that the homeowners may intend to suggest that the alleged sleeping and alleged bias issues were inextricably intertwined, we would reject any argument along those lines based on the record here and the only developed arguments advanced by the homeowners, which fail to tie alleged sleeping to alleged bias in any coherent way. *Cf.* ***Vigorito v. UBS PaineWebber, Inc.***, 477 F. Supp. 2d 481, 485 n.6 (D. Conn. 2007) (allegation that arbitrator "fell asleep during [party's] closing argument" not relevant to evident partiality inquiry); ***Velasco v. Beth Israel Med. Ctr.***, 279 F. Supp. 2d 333, 337 (S.D.N.Y. 2003) ("'not paying attention [during] the arbitration proceeding,'" would not establish bias).

Having just cited federal court precedent regarding arbitration, we note that such precedent may be considered persuasive in Wisconsin. ***Employers Ins. of Wausau v. Jackson***, 190 Wis. 2d 597, 611 n. 5, 527 N.W.2d 681 (1995). Because provisions in the Federal Arbitration Act "are substantively identical to the Wisconsin statutes on arbitration," Wisconsin courts may "consider federal court interpretations of the federal statutes on arbitration" as persuasive authority. ***Id.*** (comparing WIS. STAT. §§ 788.03, 788.04 with §§ 4, 5 of the federal act). More specifically here, 9 U.S.C. § 10(a)(4) uses the same language as WIS. STAT. § 788.10(1)(d), providing that a federal district court may vacate an arbitration award when "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Authority from other states may also be considered persuasive in Wisconsin. *See **Sands v. Menard, Inc.***, 2010 WI 96, ¶55 n.27, 328 Wis. 2d 647, 787 N.W.2d 384 (both federal case and opinions of courts from other states often have persuasive value, given similar approaches to arbitration by many states).

7

## I. LEGAL STANDARDS

### A. Arbitration

¶16    Before we address the forfeiture rule that we conclude applies here, it is important to understand the high level of deference that courts give to the results of a binding arbitration process.  Our review is governed by the following principles:

> The standard for our review of the arbitrator's decision is the same as that for the circuit court, and we review the arbitrator's decision without deference to the decision of the circuit court.  The scope of the court's review is limited.  We presume the arbitrator's decision is valid, and we disturb it only where invalidity is shown by clear and convincing evidence.  Essentially the court's role is supervisory in nature—to [e]nsure that the parties receive what they bargained for when they agreed to resolve certain disputes through final and binding arbitration.  Courts may not overturn an arbitrator's decision for "mere errors of fact or law, but only when perverse misconstruction or positive misconduct [is] plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy."  The rationale for not vacating awards because of an error of fact or law is that, when parties have agreed to submit an issue to arbitration and have chosen the arbitrator, they have agreed to be bound by the arbitrator's judgment, whether correct or incorrect as a matter of fact or law.

*Madison Teachers Inc. v. Madison Metro. Sch. Dist.*, 2004 WI App 54, ¶9, 271 Wis. 2d 697, 678 N.W.2d 311 (second alteration in original and citations omitted).

¶17    This Wisconsin approach—limiting courts to the role of merely ensuring that, in the words of *Madison Teachers*, "the parties receive what they bargained for" in agreeing to arbitration—is consistent with the approach of federal courts applying the Federal Arbitration Act.  *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) ("Because the parties 'bargained for the

arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." (quoted sources omitted)). This is also the approach of many other states. *See, e.g.*, ***Iowa City Cmty. Sch. Dist. v. Iowa City Educ. Ass'n***, 343 N.W.2d 139, 142-43 (Iowa 1983) (Unless parties take the unusual step of explicitly structuring their submission to provide otherwise, "the arbitrator becomes the final judge of the facts and law…. Mistakes of either fact or law are among the contingencies the parties assume when they submit a dispute to arbitration.").

¶18    In contrast to these extremely deferential standards of review, the standards cited by the homeowners on appeal contemplate that we now review fact finding by the circuit court and a discretionary decision of the circuit court. The homeowners appear to operate from the premise that the nature of the drowsiness or sleeping ground to vacate the award takes this situation outside the scope of the ordinary standard of review that we have quoted above, and that the circuit court could take evidence to determine whether alleged inattention by the arbitrator provided a ground to vacate the arbitration award under WIS. STAT. § 788.10(1)(d).

¶19    We need not decide under what circumstances a request to vacate an arbitration award under WIS. STAT. § 788.10(1)(d) may properly be resolved based on independent fact finding by a circuit court. Instead, our focus is on the law governing forfeiture, as applied in the arbitration context, and its application to the factual allegations made by the homeowners to the circuit court and the undisputed procedural facts. Assuming without deciding that these facts are true, we nevertheless conclude that the homeowners forfeited any objection based on these facts.

9

## B. Forfeiture

¶20    We begin by noting two familiar legal contexts, not necessarily involving arbitration, in which a party may forfeit an argument by failing to raise it earlier in a different forum.  Although the issue here does not directly involve either of these familiar forfeiture rules, the rationales behind the analogous rules are informative.

¶21    One analogous rule is that appellate courts generally ignore arguments that were not first presented in the circuit court, in order to give circuit courts fair opportunities to address the arguments, to discourage parties from "'sandbagging'" circuit courts, and to encourage parties to give circuit courts and opposing parties adequate notice of the nature of arguments.  *See State v. Counihan*, 2020 WI 12, ¶¶25-27, 390 Wis. 2d 172, 938 N.W.2d 530 (quoted source omitted).  Based on these rationales, "a reviewing court may disregard a forfeiture and address the merits of an unpreserved issue in an appropriate case." *Id.*, ¶¶26-27.[5]

---

[5] At least at times, the parties have used the term "waiver" in referring to the builder's argument that the homeowners should not be allowed to raise in the circuit court an issue that they failed to clearly raise with the arbitrator.  But the correct term on the facts here is "forfeiture."  "Although cases sometimes use the words 'forfeiture' and 'waiver' interchangeably, the two words embody very different legal concepts." *State v. Ndina*, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612.  "'Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)).

Here, the builder briefly argues that the homeowners, in deciding not to object, intentionally relinquished or abandoned the right to challenge any award based on the drowsiness or sleeping claim.  However, we understand waiver to be reserved for more explicit, open relinquishment or abandonment than occurred here and therefore we use the term forfeiture.

¶22    Another analogous rule is that courts reviewing administrative agency decisions generally cannot address issues that were not raised before the agency. *See **LaBeree v. LIRC***, 2010 WI App 148, ¶33, 330 Wis. 2d 101, 793 N.W.2d 77 ("Generally, issues not raised in administrative proceedings are deemed forfeited and cannot be raised for the first time on judicial review."); *see also **Shannon & Riordan v. Board of Zoning Appeals***, 153 Wis. 2d 713, 731, 451 N.W.2d 479 (Ct. App. 1989) ("An issue not raised before the agency generally cannot be raised on judicial review.").

¶23    Forfeiture in the arbitration context is different from both the circuit court context and the agency context in that parties in arbitration have agreed to submit their disputes to binding arbitration.[6]   This brings into play the highly deferential review standards reflected in ***Madison Teachers***, quoted above.   The question is the following:   As a general rule, should a party that has contracted to abide by the results of binding arbitration and then participates in the arbitration be allowed to seek to have a circuit court vacate the results based on an issue that the party could have, but did not, bring to the attention of the arbitrator in a clear manner?   In other words, can a party that effectively remains silent and deprives the arbitrator of the opportunity to avoid violating one of the party's rights then prevail in court on a challenge to arbitration based on a violation of that right?   As we now explain, Wisconsin has answered "no," as a general rule.   As discussed

---

[6] The facts here are to be distinguished from the scenario in which a party to an arbitration agreement fails to present *in circuit court* any *pre-arbitration* challenges to the selection of an arbitrator. *See **Borst v. Allstate Ins. Co.***, 2006 WI 70, ¶36, 291 Wis. 2d 361, 717 N.W.2d 42 ("A failure to initially object to the selection of an arbitrator, based on the information disclosed prior to the arbitration, may act as a forfeiture of any subsequent post-arbitration challenge on the disclosed information."). ***Borst*** involves the application of the familiar rule that appellate courts generally do not review issues that were not raised in the circuit court.

below, the homeowners do not agree with the application of forfeiture here. However, they do not advance any developed argument that Wisconsin law does not recognize the general rule of forfeiture in the arbitration context as we now describe it.

¶24    Our supreme court has explained:

> Waiver and estoppel are established doctrines in the field of arbitration. A party cannot attack procedural irregularities after an award when he [or she] was aware of them earlier but remained silent until an unfavorable outcome.

*City of Manitowoc v. Manitowoc Police Dep't*, 70 Wis. 2d 1006, 1020-21, 236 N.W.2d 231 (1975) (citing 5 AM. JUR. 2D *Arbitration and Award* § 183); *see also De Pue v. Mastermold, Inc.*, 161 Wis. 2d 697, 699, 703-05, 468 N.W.2d 750 (Ct. App. 1991) ("We hold that when a party seeks circuit court review of arbitration proceedings, the challenge … must have been raised before the arbitrator"; "a party cannot complain to the courts that the arbitrator acted outside the scope of his or her authority if the objection was not first raised before the arbitrator"). The court in *City of Manitowoc* refers to "waiver and estoppel," but we have no reason to consider estoppel as a separate doctrine and we interpret "waiver" in this context to mean what Wisconsin courts now refer to as "forfeiture." *See* n.5 above.

¶25    The facts in both *City of Manitowoc* and *De Pue* vary in possibly significant ways from the facts here. *City of Manitowoc* involved the City's forfeiture of claims that an arbitrator committed misconduct in refusing to consider evidence submitted by the City. *City of Manitowoc*, 70 Wis. 2d at 1013, 1015. The City had been aware of this alleged misconduct at the times it occurred, before the arbitrator issued an amended award, and the City entered into a

stipulation to vacate the initial award and to allow the arbitrator to make the amended final award. *Id.* at 1009-10, 1016, 1020-21. Here, we do not have the equivalent of a stipulation. Further, here we have the additional fact that the homeowners made generalized references to drowsiness or sleeping in their submissions requesting recusal based primarily on bias.

¶26 *De Pue* involved forfeiture of the right to object to the authority of a particular arbitrator to hear the dispute in the first place. *De Pue*, 161 Wis. 2d at 698-99. The court of appeals rejected the claim that an arbitrator acted outside the scope of his or her authority because the party making the claim had participated in the arbitration hearing without objecting *to the arbitrator* about the selection of the arbitrator; it was not enough that the party had lodged a pre-arbitration objection with an administrator for the arbitration provider. *See id.* Moreover, *De Pue* turned in part on interpretation of the rules of the American Association of Arbitrators, the forfeiture being the failure to challenge before the arbitrator the application of the association's rules to a selection-of-arbitrator procedure. *See id.* at 703-04. The court concluded that the pre-arbitration objection to the selection process had to be renewed *during the arbitration hearing* because, under the association's rules, the arbitrator is to interpret and apply the rules regarding his or her duties and powers. *Id.* Here, the parties do not make analogous arguments tied to specific arbitration rules. However, there is a similarity in that there was some objection raised, but not to the arbitrator. Here, the homeowners alleged drowsiness or sleeping to the arbitrator after the arbitration hearing, and in *De Pue* the complaining party raised an objection to the administrator before the arbitration, but not in a manner that gave the arbitrator an opportunity to address the alleged defect.

¶27 Putting aside potentially distinguishing features of *City of Manitowoc* and *De Pue* that we have noted, the shared reasoning in these cases does not appear to be limited to those precise contexts. Both contain broad statements, quoted above, that we are not free to disregard. This rule of forfeiture in the arbitration context applies to any claim of a defect in the nature of an arbitration that was or should have been known to a party that participated in the arbitration and that party later attempts to raise the claim for the first time in a clear manner in a court challenge.[7]

¶28 If there were any doubt about the scope of the rulings in *City of Manitowoc* and *De Pue*, we would still conclude that Wisconsin would join a number of federal courts interpreting the Federal Arbitration Act, as well as state courts interpreting their own arbitration regimes, on this issue. These courts have widely held that, as one respected authority has summarized the rule, a party forfeits "any claimed error made during the course of arbitration by failing to voice an objection before the arbitrator on some specific ground." *See* 21 WILLISTON ON CONTRACTS § 57:102 (4th ed. May 2020 Update). One state appellate court has noted with approval that the general rule in the federal courts is "that a party [forfeits] its right to seek vacatur of an arbitration award based on the

_____

[7] We briefly mention two scenarios different from the one here, in which forfeiture in the arbitration context generally would not apply. First, a party typically would not forfeit a claim if the party was not aware of, or failed with reasonable diligence to learn of, the potential for the claim during the course of the arbitration. *See, e.g.*, *Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 519-20, 528-29 (Tex. 2014) (no forfeiture of partiality challenge when arbitrator failed to disclose to parties at least some of the information that could have raised issues of partiality). Second, it could also change the result if the party raising the court challenge did not participate in any way in the arbitration. *See Scholl v. Lundberg*, 178 Wis. 2d 259, 262-64, 504 N.W.2d 115 (Ct. App. 1993) (party's failure to appear and participate in arbitration hearing did not forfeit party's right to raise claim that there was no enforceable agreement to arbitrate underlying dispute).

14

conduct of the arbitrator if the party is aware of the facts and fails to object before or during the arbitration hearing." ***Fisher v. USAA Cas. Ins. Co.***, 427 P.3d 791, 793 (Ariz. Ct. App. 2018); *see also* ***State Farm Mut. Auto. Ins. Co. v. Dill***, 2015 PA Super 6, 108 A.3d 882, 886 (en banc) ("Our [forfeiture] rules apply to arbitration hearings with the same force as they do to any other adversarial proceeding.").

¶29    The following is one statement of the rule and its rationale:

> Failure to present an issue before an arbitrator [forfeits] the issue in an enforcement proceeding. Parties … cannot stand by during arbitration, withholding certain arguments, then, upon losing the arbitration, raise such arguments in federal court. We will not tolerate such sandbagging. "Permitting parties to keep silent during arbitration and raise arguments in enforcement proceedings would 'undermine the purpose of arbitration'" which is to provide a fast and inexpensive method for the resolution of labor disputes.

***National Wrecking Co. v. International Brotherhood of Teamsters, Loc. 731***, 990 F.2d 957, 960-61 (7th Cir. 1993) (citations omitted). In one application of this rule, the same federal appellate court concluded that a party could not raise a claim in court that the party was disadvantaged in arbitration due to shifting membership of the arbitration board, from one session to the next, because the party had failed to make this argument to the board. *See* ***Dean v. Sullivan***, 118 F.3d 1170, 1172 (7th Cir. 1997).

¶30    Courts have routinely observed that timely objection is required to avoid unnecessary waste of time and expense, in what is supposed to be a streamlined process that is a cheaper and faster alternative to litigation, and any other rule would reward a party for sitting on a potential issue and then raising it only after receiving an adverse result. *See, e.g.*, ***Advocate Fin. Grp. v. Poulos***,

2014 IL App (2d) 130670, ¶54, 8 N.E.3d 598; *Ahluwalia v. QFA Royalties LLC*, 226 P.3d 1093, 1098 (Colo. App. 2009) ("If a party willingly allows an issue to be submitted to arbitration, it cannot await the outcome and later argue that the arbitrator lacked authority to decide the matter.").

¶31     This same basic point was made by a federal appellate court that addressed a claim of conflict of interest on the part of the arbitrator that a party raised for the first time after the arbitrator issued his decision, despite the fact that the party had been aware of the potential conflict before the arbitrator issued the decision. *See Johnson v. Gruma Corp.*, 614 F.3d 1062, 1069 (9th Cir. 2010). The court observed that it was left to assume that the party claiming conflict either did not believe that the conflict was genuine at the time of the arbitration or else was "sand-bagging, holding his objection in reserve in the event that he did not prevail in the arbitration." *Id.*; *see also Nordic PCL Constr. Inc. v. LPIHGC, LLC*, 358 P.3d 1, 24 (Haw. 2015) (forfeiture appropriate when a party "has actual or constructive knowledge of a relationship of the arbitrator" "'but fails to raise a claim of partiality.'" (quoted source omitted)).

¶32     These are the same rationales that underlie the forfeiture rules used in appellate law and administrative law that we summarize above. Further, these rationales carry additional weight in the arbitration context, given the degree of deference courts give to the results of bargained-for arbitration proceedings. Applying forfeiture in this context is consistent with reasons that the scope of judicial review of arbitration awards is limited in Wisconsin and other jurisdictions. Our supreme court made this point decades ago:

> An agreement to arbitrate is a contract in itself, and when the parties interested enter into such a contract, and the arbitrators proceed upon the basis of such a contract, the parties are in no position thereafter to complain, *especially*

> *where no exceptions have been reserved*, and where the conduct of the proceedings was such as to manifest approval on the part of all of the participants.

*Lower Baraboo River Drainage Dist. v. Schirmer*, 199 Wis. 230, 241, 225 N.W. 331 (1929) (emphasis added). The parties bargained for an arbitration process that is presumed to produce a valid outcome, *see Madison Teachers*, 271 Wis. 2d 697, ¶9, and it would defeat the purpose of the bargain if a party could be allowed to upset an award on a ground that the arbitrator or the opposing party might have been able to resolve if given a chance.

¶33 It is true that both the appellate rule of forfeiture and the administrative law rule of forfeiture are rules of administration, not mandatory rules of decision. That is, the reviewing court in each context has discretionary authority, in the appropriate case, to take up an issue despite the fact that it was not raised in the circuit court or before the administrative agency. *See Counihan*, 390 Wis. 2d 172, ¶27 ("The forfeiture rule is a rule of judicial administration, and thus a reviewing court may disregard a forfeiture and address the merits of an unpreserved issue in an appropriate case."); *Bunker v. LIRC*, 2002 WI App 216, ¶15, 257 Wis. 2d 255, 650 N.W.2d 864 ("Ordinarily a reviewing court will not consider issues beyond those properly raised before the administrative agency, and a failure to raise an issue generally constitutes a [forfeiture] of the right to raise the issue before the reviewing court," but "this rule is one of administration, not of power, and therefore the reviewing court has the power to decide issues that were not raised before the administrative agency"). We see no reason that the same would not also be true in the present context.

¶34 However, for reasons we explain in the following section of this opinion, assuming as true the relevant facts alleged by the homeowners to the

circuit court and based on the undisputed procedural facts, we conclude that the circuit court failed to properly exercise its discretion in concluding that the homeowners did not forfeit the issue. We first explain that conclusion and then address specific arguments made by the homeowners.

## II. APPLICATION OF FORFEITURE HERE

### A. The Homeowners Forfeited The Drowsiness Or Sleeping Issue

¶35 Even assuming the truth of what the homeowners alleged to the circuit court, the facts here easily fall within the rationale of the general rule of forfeiture in the arbitration context. By their own account, the homeowners were aware of the alleged defects in the arbitration at the times they allegedly occurred but they decided against raising any issue with the arbitrator. Further, as discussed in more detail below, their generalized post-hearing references to the issue asked for recusal based primarily on allegations of bias and these references were included as part of a request for only one form of relief: a recusal that would take the parties back to square one in the arbitration. Under the reasoning in the authority summarized above, in order for the homeowners to preserve a claim that the court should vacate the award based on the momentary drowsiness or sleeping that they ended up alleging in court, they needed to have asked the arbitrator to resolve any problems caused by alleged momentary drowsiness or sleeping. This they failed to do.

¶36 Persuasive authority is consistent in rejecting claims under similar circumstances, including an opinion (*Hurn*) that was cited by the arbitrator here, as detailed below. *See **Hurn v. Macy's, Inc.***, 728 F. App'x 598, 599 (7th Cir. 2018) (no vacatur when "the arbitrator fell asleep during the hearing" because "even if the arbitrator missed something, [the objecting party] does not say what

18

that was"); *see also* **Von Essen, Inc. v. Marnac, Inc.**, No. 3:00-MC-73-L, 2002 WL 35634037 at \*3-4 (N.D. Tex. Jan. 2, 2002) (declining to vacate arbitration award based on party's claim that arbitrator fell asleep during hearing because party forfeited this argument by failing to object during arbitration that arbitrator was asleep; any other decision "would be rewarding [the] decision to wait until [the now complaining party] lost the arbitration to raise an issue that could have been addressed during the arbitration"), *aff'd*, 64 F. App'x 416 (5th Cir. 2003); **Uhl v. Komatsu Forklift Co.**, 512 F.3d 294, 299-300 (6th Cir. 2008) (appearing to treat as forfeited claim that arbitrator "closed his eyes during [the party's] arguments and did not pay attention to its attorneys," because the party making the claim "did not object … during the arbitration hearing"). In rejecting a similar claim, one Wisconsin federal district court judge stated:

> As an initial matter, I agree with plaintiff that if defendant believed [the arbitrator] was dozing off, defendant should have asked for a break during the hearing. To raise this issue now seems far too late. But even setting that aside and assuming that the arbitrator dozed off, defendant has pointed to nothing suggesting that it was prejudiced by the alleged napping. Defendant says that [the arbitrator] slept during important testimony, but it has failed to identify any specific testimony that [he] missed. For example, defendant does not point to anything in [the arbitrator's] final decision on liability as evidence that [he] misunderstood or missed important testimony. Defendant's arguments about prejudice are based entirely on speculation.

**Herrington v. Waterstone Mortg. Corp.**, No. 11-CV-779-bbc, 2017 WL 6001866 at \*5 (W.D. Wis. Dec. 4, 2017), *rev'd on other grounds*, 907 F.3d 502 (7th Cir. 2018).

¶37 The homeowners here resemble the party in **Dean** that waited until a court challenge to argue that it had been deprived of the benefit of a fully informed

arbitration board. *See Dean*, 118 F.3d at 1172. They also resemble the party in *Johnson* that waited to argue that it was deprived of a conflict-free arbitrator. *See Johnson*, 614 F.3d at 1069. We are left to assume that the homeowners here either did not believe at the time of the hearing that drowsiness or sleeping was a genuine issue or they did have that belief but decided to wait to attempt to argue the point in a clear manner only after they received an adverse outcome.

¶38   The homeowners do not contend, and appear to have no basis to contend, that the arbitrator cut off an argument or otherwise did not allow them a fair opportunity to request that the arbitrator resolve any problems caused by alleged momentary apparent drowsiness or sleeping, either during or after the hearing. *See Lebow v. Bogner-Seitel Realty*, 55 A.D.2d 695, 696, 389 N.Y.S.2d 51 (N.Y. App. Div. 1976) (party had "ample opportunity to object" to arbitrator's independent inspection, which could have constituted misbehavior meriting vacating award, and therefore forfeited objection).

## B.  The Homeowners' Arguments

¶39   The homeowners contend that they sufficiently raised the drowsiness or sleeping issue during the arbitration hearing by allegedly making reasonable attempts to rouse the arbitrator. They also contend that they sufficiently raised the objection in the documents they submitted to the arbitrator several months after the merits had been fully presented. We address each argument in turn and explain why each is unavailing.

¶40   We put to the side attempts by the homeowners to reargue the merits of the underlying disputes before the arbitrator, which they fail to coherently tie to the forfeiture issue. This includes an undeveloped and conclusory argument to the apparent effect that the homeowners' forfeiture should be excused because the

builder "sought to exploit" alleged drowsiness or sleeping by the arbitrator. Without support and based on speculation, the homeowners attempt to transform various specific disagreements that they have with the arbitrator's determinations and his approaches to the evidence into examples of alleged "fogginess," "disorientation," or "sleepiness."

### 1. Events At The Arbitration Hearing

¶41    The homeowners contend that the "reasonable attempts" that they allegedly made to rouse the arbitrator during the hearing "sufficiently notified him that they objected to him continuing to sleep" and therefore they did not forfeit the issue. However, as summarized above, by Taylor's own account in the circuit court, there were merely "a few times" or "a couple of times" when Taylor, "trying to be subtle about it," "tried to show [the arbitrator] something to wake him up" or "kind of did something on the table to kind of make some noise to bring him to." Assuming the accuracy of Taylor's account, this could not constitute conduct sufficient to place the arbitrator on notice that the homeowners were concerned that the arbitrator was not sufficiently alert to absorb evidence or argument in general or concerned that he was unable to absorb any particular evidence or argument.

¶42    It is puzzling for the homeowners to argue that they "sought timely correction" of drowsiness or sleeping because they made "reasonable attempts to wake" the arbitrator when they fail to explain why their "attempts," if "reasonable," were not sufficient to resolve the issue. Put slightly differently, the homeowners fail to recognize that, as far as a reasonable arbitrator in this position would have been concerned, this describes a potential problem that has been solved on the spot. Common experience tells us that even conscientious and

diligent individuals acting as neutrals may on occasion be subject to moments of drowsiness, or what appears to be drowsiness, when seated for extended periods. Here, at least to be consistent with the homeowners' allegations to the circuit court, reasonably attentive and timed efforts by the homeowners at the hearing would have terminated what they told the circuit court appeared to be momentary drowsiness or nodding off, without the arbitrator missing anything.

¶43     Beyond that, the homeowners have failed at any time to identify any particular alleged drowsiness or sleeping that had a material effect on any decision making by the arbitrator. They seem to think that it is enough that they alleged in the circuit court that drowsiness or sleeping occurred at times during testimony of their expert and that the arbitrator's decisions conflicted with their views of the evidence. These allegations would be merely the context for the more specific allegations that the homeowners needed to make to preserve the issue, which they have never made.

¶44     Stepping back, the homeowners never suggested to the arbitrator, nor for that matter did they testify to the circuit court, that they observed a chronic pattern of sleeping that simply could not be resolved through their alleged "subtle" rousing efforts. The same problem defeats their argument that it would be "unreasonable" to have required them to identify to the arbitrator "precisely what evidence the arbitrator missed." They apparently intend to suggest now that the alleged drowsiness or sleeping was so pervasive that it would have been impossible for them to keep track of it. Again, this is not a claim that they presented to either the arbitrator in their scattered references before he issued his decision nor in the specific allegations they made to the circuit court. Indeed, it is contradicted by their testimony about their allegedly using only a limited number of "subtle" attempts to rouse him.

22

¶45    The homeowners echo a point that the circuit court made in rejecting forfeiture.   The point is apparently based on the assumption that the parties anticipated at the arbitration hearing that no transcripts or other summary would be created based on any recording of the hearing.  The court opined that it would be "odd" under these circumstances to require "a party to formally object to the arbitrator's sleepiness during a hearing."   In apparently the same vein, the homeowners contend that they were "not required to speak to a nonexistent record."  We are not certain what the court meant by "formally object" or what the homeowners mean by "nonexistent record."  Whatever is intended, however, this appears to shift the analysis from a proper focus on the undisputed facts here—the homeowners failed to raise the topic at the hearing—to an improper focus on a hypothetical scenario that differs from this one.  In the hypothetical, a party in fact raises an objection during an arbitration proceeding, and there follows a dispute in the circuit court about details of the objection.  That would be a different case than this one.   Here, there is no dispute that the homeowners completely failed to articulate any concern with the arbitrator during the hearing.

¶46    The homeowners argue that they could not be expected to "verbally confront" the trier of their case.  We reject this argument for four reasons.  First, the homeowners, themselves both attorneys, were represented at the hearing by counsel.  Second, even if no attorneys had been involved, in contracting for arbitration the homeowners agreed to enter a process in which they (with or without any attorneys they might retain) would be responsible for advocating for their rights, even when advocacy might become complicated or delicate.  Third, the situation here is not more sympathetic than the following scenario, which would seem to be a text book forfeiture scenario:  a party makes a first-time claim to the appellate court that the party had witnessed a circuit court judge sleeping

through material evidence presentation at a contested proceeding. Fourth, the homeowners were willing to raise the allegations with the arbitrator multiple times *after* the hearing but before he issued a decision.

## 2. Post-Hearing Events

¶47 We now turn to the homeowners' arguments that they did not forfeit the objection because they raised it in post-hearing submissions to the arbitrator. Additional background information is necessary to address this argument. The additional background includes some observations to explain our views on significant aspects of the post-hearing submissions.

*Additional background*

¶48 The homeowners requested that the arbitrator recuse himself in a 129-page, single-spaced, undated document. This was after the parties submitted post-hearing briefing on the merits but before the arbitrator issued his decision. The document opened by stating that it was submitted in response to the arbitrator's direction that the homeowners "provide an explanation of why they requested a fully reasoned decision as to the arbitral award, the level of detail requested in the decision, and their intended use of the decision." However, instead of addressing those issues, the document consisted primarily of allegations of purported bias by the arbitrator. It concluded by stating that, because the arbitrator "is simply not sufficiently neutral to render a fair decision," the homeowners "object to [the arbitrator] rendering a decision in this matter."

¶49 The homeowners raised many purported concerns in this document, focusing primarily on allegations of bias. Pertinent here, the following are all of the allegations regarding drowsiness or sleeping: the arbitrator's line of

24

questioning on one point caused the homeowners to worry that the arbitrator's "intermittent dozing off had interfered with his ability to process and understand testimony"; the arbitrator unfairly assigned improper motives to the homeowners in failing to approve bills from the builder, and "[t]his led the Homeowners to question whether [the arbitrator] was familiar with the terms of the Contract and whether his drowsiness had caused him to miss substantial portions of the testimony"; the homeowners "prefer to conclude that [the arbitrator's] lack of knowledge of certain evidence resulted from his inadvertent dozing off rather than a willful attempt to simply ignore the evidence"; the arbitrator's "statement that he would rely more heavily on the trial briefs than testimony at the hearing," caused the homeowners to "assume[]" that it "may have been due to the fact that he intermittently dozed off."  The homeowners stated that they

> regretted [the arbitrator's] failure to disclose that he apparently experiences intermittent difficulties staying awake,… [and] [h]ad [the arbitrator] made such disclosure, the Homeowners would have sought the opportunity to stipulate to an accommodation to take breaks accordingly during the proceedings.  While the Homeowners acknowledge that it may be entirely coincidental, [the arbitrator] seemed to doze off more frequently during [the Homeowners'] presentations of evidence.  The Homeowners believe this may have contributed to [the arbitrator's] lack of knowledge as to certain issues and limit[ed] his ability to reach a fair and unbiased ruling in the case due to his reliance upon representations by [counsel for the builder], many of which were entirely false.

¶50    We make three observations regarding this document.  First, it did not explain whether the homeowners took the position that the allegations of drowsiness and sleeping, considered alone, merited recusal.  It did not identify particular evidence or argument allegedly missed by the arbitrator.  As stated, it contained only the general allegations that, to an unspecified degree, sleeping

"interfered with [the arbitrator's] ability to process and understand testimony in the case," and that the arbitrator "seemed to doze off more frequently during [the homeowners'] presentations of evidence."

¶51    Second, this document was initially framed as a purported response to the arbitrator's request for input regarding the nature of his decision but consisted primarily of allegations of bias and concluded with the request that he recuse himself based on the alleged bias.  Putting aside the question of whether this could be reasonably interpreted as a request for recusal based on drowsiness or sleeping alone, nothing in the document resembled a request that the arbitrator reopen the evidence to reconsider or consider for the first time particular evidence or argument that he allegedly missed due to drowsiness or sleeping.  To the contrary, it requested that the parties return to square one in the arbitration, just as the arbitrator was about to issue his decision based on extensive evidence production and argument.

¶52    Third, the document contained the homeowners' implicit acknowledgement that the homeowners failed to take advantage of their ability to ask the arbitrator to "take breaks."  As the district court sensibly noted in *Herrington*, requests for breaks would presumably have been helpful, assuming that they were in fact needed, to minimize or avoid drowsiness or sleeping.  In a similar vein, as the builder points out, this document did not refer to any alleged attempt by the homeowners at the hearing to rouse him.  This left the arbitrator largely oblivious to the nature of their "sleeping" grievance and what relief they sought.

¶53   In response to this document, counsel for the builder sent a letter to the arbitrator and the homeowners.  On the alleged sleeping topic, the attorney stated that "this allegation is untruthful," because it was

> not something I witnessed during any of the five days of testimony.  [The arbitrator] was fully engaged throughout and frequently asked questions to clarify and gather additional information.  The homeowners['] positions were repeated over and over and over again and could not possibly have been missed.

In addition, the builder took the following position:

> Most significantly, the complaint of dozing is made in connection with arguments about testimony during the February 28 to March 2 hearing dates.  The homeowners choose to lay in the weeds and bring their arguments six months after the alleged occurrence.

In sum, the builder denied that the arbitrator had missed anything at the hearing and further argued that the homeowners were raising the topic too late in the process.

¶54   In reply, counsel for the homeowners submitted a letter on September 12, 2018, reasserting their position that they "did not receive a fair and impartial hearing."  The entire discussion on the allegation of drowsiness or sleeping follows:

> While [counsel for the builder] seems to deny that [the arbitrator] fell asleep during the proceedings, we do not believe that issue is actually in question.  Rather, it appears that [counsel for the builder] has attempted to extract a benefit from [the arbitrator's] drowsiness by making false claims as to testimony during the hearing.  This is evidenced by [the builder and its counsel's] attempts to mischaracterize testimony and [counsel's] misleading claims falsely alleging that [the arbitrator] should find such testimony in his notes.

¶55    On September 13, 2018, the arbitrator denied the motion for recusal, primarily addressing the homeowners' claims of alleged bias.  The only reference to the drowsiness or sleeping issue in this order was to provide the following quotation from a federal court of appeals decision, cited above, which denied a claim that an arbitration award should be vacated:

> Hurn argues that vacatur is warranted because, he alleges, the arbitrator fell asleep during the hearing and needed to be awakened to hear testimony, but these allegations also are insufficient to vacate the award.  We will ignore that Hurn has offered no evidence of what happened at the arbitration.  By his own description of the events, Hurn waited for the arbitrator to wake up before presenting evidence.  That implies that the arbitrator was awake to hear his evidence.  But even if the arbitrator missed something, Hurn does not say what that was.  Thus he again has not shown that the arbitrator's sleeping was prejudicial, 9 U.S.C. § 10(a)(3), or that he "so imperfectly executed" his powers, 9 U.S.C. § 10(a)(4), that vacatur is warranted.

*Hurn*, 728 F. App'x at 599.  The arbitrator cited this passage apparently to express the view that the homeowners had failed to identify any evidence or argument that he had allegedly missed.

¶56    On September 21, 2018, the homeowners sent a lengthy letter to the arbitrator requesting reconsideration of his order denying the recusal motion.  This included allegations that the arbitrator had an "apparent inability to stay awake in order to competently follow the proceedings," and that he had "blinked, nodded, and dozed in and out of a haze of sleepiness" at some unidentified point or points in the arbitration hearing.  Again, however, this letter failed to explain what the arbitrator had allegedly missed.   The homeowners asserted that "there is substantial evidence that your inability to stay awake clearly prejudiced our case,"

but without tying any meaningful error or shortcoming in the arbitrator's conduct to any specific instance of alleged drowsiness or sleeping.

¶57     The letter asserted that the homeowners had presented the arbitrator with a transcript reflecting some hearing testimony and that the "apparent level of interference your sleepiness caused" was revealed in the arbitrator's stated understanding that there had been no recording made of the proceedings. However, the homeowners' account of this incident did not make clear what portion of the hearing might have been visibly or openly recorded and what kind of notice the arbitrator received about any recording or transcripts.  Further, it was not accompanied by any specific allegation of drowsiness or sleeping during particular evidence or argument.

¶58     On September 22, 2018, the day before the arbitrator issued his decision on the merits and award, the arbitrator denied the motion for reconsideration of his recusal decision.   The arbitrator concluded that the reconsideration motion presented "no manifest error and no evidence that couldn't have been presented in the original motion to recuse."   In addressing the homeowners' suggestion that, due to drowsiness or sleeping, the arbitrator might not have understood that the homeowners made recordings or transcripts, the arbitrator stated:

> Despite Ms. Taylor's representation, I have no recollection of having given my prior approval for such a recording or such a recording having been made.  Ms. Taylor's suggestion that my drowsiness somehow explains why I was unaware of recordings having been made continuously over the course of a five-day arbitration hearing is incredible on its face.

*Additional Analysis*

¶59    Elaborating on observations we have made as part of the additional background, we conclude that the homeowners continued to forfeit the drowsiness or sleeping issue after the hearing and before the arbitrator issued his decision on the merits.  They merely asked the arbitrator to recuse himself, primarily on grounds of bias.  They added scattered allegations that he had appeared drowsy or to have slept at unspecified times.  Significantly, their post-hearing request called for the arbitrator to return the parties to square one with a new arbitrator with no previous background in the extensive arbitration proceedings to that time.  This request that the arbitrator effectively jettison the entire arbitration to date bears no resemblance to a hypothetical request to reopen the evidence to reconsider or re-hear identified evidence or argument that an arbitrator appeared to have missed.  It was not a request that the arbitrator resolve any problems caused by the momentary apparent drowsiness or sleeping to which the homeowners testified in the circuit court.  The homeowners fail to develop an argument to the contrary.

¶60    The homeowners briefly suggest that the arbitrator, in relying on persuasive authority (*Hurn*) to decline recusal, failed to appreciate the significance of the fact that he was not part of a multi-member panel, which might have allowed arbitrator colleagues to make up for anything he missed.  Whatever significance it might have to the forfeiture issue, the suggestion is in any case unsupported and counterintuitive.  The homeowners give us no reason to think that the arbitrator did not appreciate the obvious fact that, as a lone arbitrator, he did not have colleagues available to make up for anything he might miss.

¶61    Finally, the homeowners assert that the builder failed to raise the forfeiture issue to either the arbitrator or to the circuit court.  Neither assertion has

merit. As referenced above, the builder unambiguously stated in a submission to the arbitrator that it believed both that there had been no missed evidence or argument at the hearing, and that it was "significant[]" that the homeowners "choose to lay in the weeds and bring their arguments six months after the alleged occurrence." Then, in the circuit court, the builder made forfeiture a central argument.[8]

## CONCLUSION

¶62 For all of these reasons, we reverse the order denying confirmation of the arbitrator's decision and award, reverse the order vacating the decision and award, and remand with instructions that the circuit court confirm the award and enter judgment against the homeowners.

*By the Court.*—Order reversed and cause remanded with directions.

---

[8] Given our conclusion that the homeowners forfeited their claim, we deny the homeowners' motion for sanctions against the builder for allegedly pursing a frivolous appeal and also the homeowners' motion to strike the builder's reply on the same topic.