**2022 WI App 14**

# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case No.:          2019AP2205

Complete Title of Case:

LOREN IMHOFF HOMEBUILDER, INC.,

PETITIONER-APPELLANT,

V.

LISA TAYLOR AND LUIS CUEVAS,

RESPONDENTS-RESPONDENTS.

| | |
|---|---|
| Opinion Filed: | March 31, 2022 |
| Submitted on Briefs: | March 10, 2022 |

| | |
|---|---|
| JUDGES: | Blanchard, P.J., Kloppenburg, and Graham, JJ. |
| Concurred: | |
| Dissented: | |

Appellant
ATTORNEYS:          On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Paul W. Schwarzenbart* and *Jeffrey W. Younger* of *Stafford Rosenbaum LLP*, Madison.

Respondent
ATTORNEYS:          On behalf of the respondents-respondents, the cause was submitted on the brief of *Lisa Taylor*, pro se, and *Luis Cuevas*, pro se.

**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**March 31, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP2205**

Cir. Ct. No. **2016CV3177**

**STATE OF WISCONSIN**

**IN COURT OF APPEALS**

LOREN IMHOFF HOMEBUILDER, INC.,

PETITIONER-APPELLANT,

V.

LISA TAYLOR AND LUIS CUEVAS,

RESPONDENTS-RESPONDENTS.

APPEAL from an order of the circuit court for Dane County: FRANK D. REMINGTON, Judge. *Affirmed*.

Before Blanchard, P.J., Kloppenburg, and Graham, JJ.

¶1 BLANCHARD, P.J. The circuit court granted a motion to compel arbitration in a dispute over a home remodeling project between Lisa Taylor and Luis Cuevas (the homeowners) and Loren Imhoff Homebuilder, Inc. (the builder). The arbitrator held a five-day hearing and produced an award. Based on a motion

by the homeowners, the circuit court vacated the award and remanded for a new arbitration. The court found that the arbitrator missed key evidence because he slept during parts of the hearing. Based on that finding, the court concluded that the arbitrator "so imperfectly executed" his "powers" "that a mutual, final and definite award upon the subject matter submitted was not made." *See* WIS. STAT. § 788.10(1)(d) (2019-20) (including such "imperfect execut[ion]" as one ground on which a circuit court must vacate an arbitration award).[1]

¶2　The builder appealed, seeking reversal and remand for confirmation of the award. *Loren Imhoff Homebuilder, Inc. v. Taylor*, 2020 WI App 80, ¶13, 395 Wis. 2d 178, 953 N.W.2d 353 (*Imhoff I*), *rev'd*, *Loren Imhoff Homebuilder, Inc. v. Taylor*, 2022 WI 12, ¶22, 400 Wis. 2d 611, 970 N.W.2d 831 (*Imhoff II*). This court reversed the circuit court based on our conclusion that the homeowners had forfeited their claim that the award should be vacated. *Imhoff I*, 395 Wis. 2d 178, ¶¶35-38. Given that dispositive decision, we did not reach the merits of the circuit court's decision to vacate the award. *Id.*, ¶15.

¶3　After accepting the homeowners' petition for review, our supreme court reversed our forfeiture decision. *Imhoff II*, 400 Wis. 2d 611, ¶22. However, the six participating justices split evenly on the merits. *Id.*, ¶23. Accordingly, this court was directed to resolve the merits on appeal for the first time. *Id.*

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶4    We affirm the circuit court's decision to grant the statutory challenge to the award based on two conclusions:  (1) the builder fails to show that the court clearly erred in crediting testimony that the homeowners gave in the circuit court, which the court interpreted to mean that the arbitrator slept through "substantial parts" of evidentiary portions of the hearing, including during "important portions" of testimony given by an expert called by the homeowners; and (2) given those facts, the homeowners show by clear and convincing evidence that the award must be vacated under WIS. STAT. § 788.10(1)(d), because the arbitrator "failed to perform the duty placed upon" him to avoid entirely missing significant pieces of material evidence.  *See Garstka v. Russo*, 37 Wis. 2d 146, 149-50, 154 N.W.2d 286 (1967) (the arbitrators "failed to perform the duty placed upon them by the submission" for arbitration).

## BACKGROUND

¶5    We need not repeat the extensive summary of pertinent background contained in *Imhoff I* and *Imhoff II*.  The summaries of facts in *Imhoff I* and *Imhoff II* are consistent with each other and the supreme court did not indicate that this court misconstrued the record.  It is sufficient here to detail the evidence and the circuit court's specific factual findings regarding the homeowners' allegations that the arbitrator slept during substantial portions of the presentation of material evidence and the court's legal conclusion that this resulted in an award that must be vacated.

¶6    The circuit court held a hearing at which it took evidence and addressed issues that included alleged sleeping by the arbitrator.  At this same hearing, the court rejected two alternative arguments for vacating the arbitration award:  alleged partiality of the arbitrator and lack of evidence.  The court's

3

rulings on those alternative arguments are not at issue in this appeal and we discuss them no further.

¶7      The homeowners (primarily Taylor) alleged that the arbitrator had "glazed eyes," and displayed "haziness, drowsiness" at times during the arbitration hearing and was "sometimes outright sleep[ing] and going into that state."[2]  This allegedly included "a number of instances" in which the arbitrator's head was "bobbing up and down," and he was "trying to keep" his eyes open, but managed "just a fixed stare."  Taylor testified that, "a few times … I literally tried to show him [a document] to wake him up."  While the arbitrator "did not sleep through the whole five days," sleeping "happened each day."  "It was particularly bad in the late mornings and towards the afternoon."

¶8      Taylor testified that the arbitrator appeared to sleep the most "while [the homeowners'] expert was testifying."  On a related note, she testified that one aspect of the arbitrator's decision ignored testimony given by the expert called by the homeowners, which "might very well" have demonstrated that the arbitrator failed to comprehend or appreciate this aspect of the expert's testimony.

¶9      Cuevas supported Taylor's allegations "100%," telling the circuit court that he also observed the arbitrator's head "bobbing" and the arbitrator

---

[2] Taylor and Cuevas made unsworn factual representations in pleadings and orally to the circuit court before either was sworn in during the course of the hearing in the circuit court.  The builder does not argue that the circuit court could rely on some of their allegations and not others because they were unsworn, and we follow the parties and the circuit court in not distinguishing between sworn and unsworn allegations.  Instead, we assume without deciding that the circuit court could properly rely on all of the homeowners' representations in making findings of fact.

"coming to," and that what he observed could not have been the arbitrator merely resting his eyes while taking in testimony.

¶10    In contrast, the attorney who represented the builder during the arbitration testified that he did not observe the arbitrator sleeping at any time during the hearing. He further testified:

> I'm confident that if he had been drowsy or sleeping during any part of the hearing—. There was questioning going on and answers going on the entire period of time [and] I would have noticed it. I dispute, wholeheartedly, the allegations that [the arbitrator] was asleep or drowsy during these proceedings. He was fully engaged the entire time. He took copious notes. He asked his own questions, directly, of every witness[,] including the expert witness [for the homeowners, who] is the focus of these allegations.

Elaborating on this last point, the attorney testified that the arbitrator was "fully engaged" in connection with evidence given by the homeowners' expert, so much so that the arbitrator sometimes led questioning of the expert. The attorney also testified that the arbitrator in fact addressed the issues that the homeowners contended he missed, allegedly as a result of sleeping.

¶11    The builder's attorney further testified that he did not recall any incident in which Taylor appeared to attempt to wake up the arbitrator by showing him a document, as she represented had occurred.

¶12    The circuit court asked the builder's attorney why he was not testifying more categorically that the arbitrator never slept during the arbitration hearing. The attorney responded that he could not say that he watched the arbitrator "every single minute" of the five-day hearing. Further, the attorney testified, it is "just not my nature to go out on a limb and make a statement that I can't necessarily prove other than to say, 'Here is what I observed. He was not

sleeping. I was there the entire period of time.'" The attorney testified that he disputed the allegation that the arbitrator's "head was bobbing and that he was jolting in and out of sleep. I can say that he … asked questions of every single witness and took copious notes. I watched him write notes. He knew what was going on."

¶13 During the circuit court proceedings, the builder was represented by additional counsel, not only the attorney who represented the builder during the course of the arbitration and who testified in the circuit court. The builder's circuit court counsel argued that the record showed that the arbitrator had "addressed each issue that the [homeowners'] expert testified about and what was in [the expert's] report," and that the arbitrator relied on "the expert's spreadsheet" in explaining the award. Counsel also elicited admissions from the homeowners that they did not bring the sleeping issue to the attention of the arbitrator at any time during the arbitration hearing.

¶14 Turning to the arbitrator's responses or lack of responses to these allegations, the arbitrator did not testify or provide any written submission to the circuit court. The circuit court noted that, so far as the record revealed, the arbitrator's response to the allegations was limited to a single footnote that the arbitrator included in a response to a motion for reconsideration by the homeowners, a footnote that the circuit court deemed ambiguous and of limited value.

¶15 On the topic of positions taken or not taken by the arbitrator, the attorney who represented the builder in the arbitration testified that he was not surprised that the arbitrator did not more categorically deny sleeping, because the

6

attorney himself "regarded the allegation as patently false and didn't give much thought or credibility to it whatsoever."

¶16 At the conclusion of the hearing, the circuit court found that the homeowners' testimony about sleeping, and its effects on the arbitration, was all "credible" and "unrebutted." The court appeared to acknowledge that, at points in his testimony, the attorney for the builder expressed certitude that the arbitrator had not missed evidence as a result of sleeping. However, the court characterized the gist of the attorney's credible submissions and testimony as amounting to, "I didn't see it," which was not necessarily inconsistent with the testimony of the homeowners.

¶17 Expanding on this concept, the circuit court placed substantial weight on the failure of the builder to produce more categorical evidence to counter the homeowners' allegations that the arbitrator slept, as opposed to merely submitting that the attorney for the builder was not aware of any sleeping. The court stated:

> It's not a denial if someone says[,] "Someone is sleeping." And someone says[,] "I didn't see it." The guy who says [that he] "didn't see it" may not have seen it. But it doesn't mean it didn't happen.

The court emphasized this view in a written decision that followed the hearing, stating: "The lack of an explicit denial by Loren Imhoff's counsel, as well as the weight and credibility of the witnesses during the hearing, led the court to find that it was more likely than not that the arbitrator slept through major portions of the arbitration hearing." Phrasing the idea slightly differently at another point in its written decision, the court credited testimony by the homeowners that they

7

observed "the arbitrator falling asleep during substantial parts of the arbitration hearing."

¶18     Regarding missed testimony, the court found that the homeowners had made a "showing of prejudice" that the arbitrator "discounted the testimony of" the homeowners' expert because the arbitrator did not comprehend it "due to his drowsiness." This included a specific finding that the arbitrator "fell asleep during" "important portions" of the testimony of the expert called by the homeowners.

¶19     Based on these findings, the circuit court concluded that the homeowners showed by clear and convincing evidence that the arbitrator "so imperfectly executed" his "powers" "that a mutual, final and definite award upon the subject matter submitted was not made." *See* WIS. STAT. § 788.10(1)(d).[3]

---

[3]  WISCONSIN STAT. § 788.10(1)-(2) provides in its entirety:

> (1) In either of the following cases the court in and for the county wherein the award was made must make an order vacating the award upon the application of any party to the arbitration:
>
> (a) Where the award was procured by corruption, fraud or undue means;
>
> (b) Where there was evident partiality or corruption on the part of the arbitrators, or either of them;
>
> (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;

(continued)

# DISCUSSION

¶20 The builder argues that the circuit court should not have vacated the award based on WIS. STAT. § 788.10(1)(d). However, the builder advocates for an incorrect standard for our review of fact finding by the circuit court and fails to support any potential argument that the court clearly erred in finding relevant facts. Further, the builder does not persuade us that the court incorrectly applied the law in concluding, based on its findings of fact, that the award had to be vacated because the arbitrator "so imperfectly executed" his "powers" "that a mutual, final and definite award upon the subject matter submitted was not made." We now explain why we affirm under the proper legal standards.

¶21 We first address the circuit court's findings of fact and explain why we conclude that the builder fails to show that the circuit court clearly erred in finding that the arbitrator slept during "major portions" or "substantial parts" of the arbitration hearing, including during significant portions of the testimony of the expert called by the homeowners. We then turn to the legal significance of

---

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

(2) Where an award is vacated and the time within which the agreement required the award to be made has not expired, the court may, in its discretion, direct a rehearing by the arbitrators.

This is part of the Wisconsin Arbitration Act, which as our supreme court has noted our legislature enacted in 1931, providing a statutory basis for court decisions addressing arbitrations. *See Garstka v. Russo*, 37 Wis. 2d 146, 150, 154 N.W.2d 286 (1967); 1931 Wis. Laws, ch. 274. The provisions of the Act were contained in Chapter 298 of the revised statutes until it was renumbered to WIS. STAT. ch. 788 by 1979 Wis. Laws, ch. 32, § 64.

those facts and explain why we conclude that the facts support the circuit court's conclusion that, under WIS. STAT. § 788.10(1)(d), the award must be vacated.

## I. Facts

### A. Standard Of Review Of Circuit Court Findings Of Fact

¶22 The parties fail to cite, and our research has not revealed, case law in Wisconsin addressing the standard of review that we are to apply to a circuit court's findings of fact under these specific circumstances.[4] We now explain why we conclude that the clearly erroneous standard applies to our review of that fact finding.

¶23 The builder cites the settled law that applies when a party is appealing a circuit court order confirming, modifying, correcting, or vacating an arbitration award based entirely on undisputed facts and the record created in the course of the arbitration—that is, when resolution of the issue did not require the circuit court to make factual findings regarding disputed facts. *See, e.g.*, ***Madison Teachers Inc. v. Madison Metro. Sch. Dist.***, 2004 WI App 54, ¶9, 271 Wis. 2d 697, 678 N.W.2d 311 (concluding, on de novo review of arbitrator's decision based exclusively on arbitration record, that arbitrator did not act outside the scope of his authority in making challenged award). But here, the homeowners' challenge to the award is based primarily on evidence created in the circuit court

---

[4] To clarify, we are not referring here to our standard for reviewing the circuit court's determination here that the award must be vacated under WIS. STAT. § 788.10(1)(d), given the facts found by the court, which as we explain separately below is de novo. Instead, we discuss our standard for reviewing the circuit court's findings of fact based on the evidence adduced at the circuit court hearing.

that was extrinsic to the arbitration record. We qualify with the word "primarily," because aspects of the arbitration record provide necessary context for the extrinsic evidence. But it remains that the circuit court rested its core decisions on the extrinsic evidence and that the arbitrator himself did not provide any clear findings about whether he had slept through significant portions of the hearing.[5]

¶24 The homeowners rely on a general standard of review rule that applies across many areas of the law. The general rule is that we review historical facts found by a circuit court to determine whether the court clearly erred in making the findings. This rule is based on the superior position of the circuit court to assess credibility and discern factual nuances compared with appellate review, which the appellate court must base exclusively on items in the appellate record. *See, e.g.*, WIS. STAT. § 805.17(2) (a circuit court's "[f]indings of fact shall not be set aside unless clearly erroneous ...."); ***State v. Lepsch***, 2017 WI 27, ¶23, 374

---

[5] We now explain the circuit court's finding that the single reference that the arbitrator made to the sleeping topic, which the arbitrator provided in a footnote in a response to a motion for reconsideration by the homeowners, was ambiguous and of limited value. The circuit court said that it did not "know what to make" of the following statement by the arbitrator:

> Ms. Taylor's suggestion that my drowsiness somehow explained why I was unaware of the recording having been made continually over the five days of the arbitration hearing is incredible on its face.

The arbitrator was referring to an audio recording that the homeowners claimed to have made of all or parts of the arbitration hearing. The circuit court appeared to acknowledge that one interpretation of the arbitrator's statement, in favor of the arbitrator, would be as a denial that sleeping interfered with the arbitrator's understanding of at least the recording issue and perhaps other issues. But the court further explained that the statement might also be interpreted as a narrow denial focused exclusively on the recording issue and that it was not a claim that sleeping did not interfere with the arbitrator's ability to follow other issues, including significant ones. We conclude that this was not a clearly erroneous set of findings by the circuit court, and for this reason we operate from the premise that the arbitrator did not provide any clear position or finding on this topic.

Wis. 2d 98, 892 N.W.2d 682 (because circuit courts are in "superior position[s] to assess the demeanor and disposition of prospective jurors," we "'uphold the circuit court's factual finding that a prospective juror is or is not subjectively biased unless it is clearly erroneous.'" (quoted source omitted)); *State v. Byrge*, 2000 WI 101, ¶¶4, 44, 237 Wis. 2d 197, 614 N.W.2d 477 (findings of a circuit court in a competency to stand trial determination will not be upset unless they are clearly erroneous, because "the decision pivots on factors only a trial court can appraise," such as "the court's observation of witness credibility and demeanor."). We conclude that the homeowners correctly rely on this rule under these circumstances.

¶25     Findings of fact are clearly erroneous when they are contrary to "the great weight and clear preponderance of the evidence." *Royster-Clark, Inc. v. Olsen's Mill, Inc.*, 2006 WI 46, ¶12, 290 Wis. 2d 264, 714 N.W.2d 530. Under this standard, "'even though the evidence would permit a contrary finding, findings of fact will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding.'" *Id.* (quoted source omitted). In addition, under this standard we accept the circuit court's assessment of the credibility of a witness unless, under highly unusual circumstances not present in this case, we conclude that credibility can be established as a matter of law. *See Schultz v. Sykes*, 2001 WI App 255, ¶32, 248 Wis. 2d 746, 638 N.W.2d 604.

¶26     Persuasive authority supports our conclusion that, under Wisconsin law, the clearly erroneous standard applies to our review of facts found by a circuit court in a case such as this one. For example, in reviewing a trial court's denial of a motion to vacate an arbitration award based on alleged arbitrator partiality, the Supreme Court of Utah treated the substantive issue as a legal issue to be reviewed "for correctness," but the court explained that it would "review the [trial] court's

factual findings under a clearly erroneous standard."[6] *DeVore v. IHC Hosps., Inc.*, 884 P.2d 1246, 1256 (Utah 1994); *see also Buzas Baseball, Inc. v. Salt Lake Trappers, Inc.*, 925 P.2d 941, 948-49 (Utah 1996) (noting that "[i]n some instances, it is appropriate for a trial court to make findings of fact in determining whether grounds for vacating or modifying an arbitration award exist, such as when the claim is one of partiality on the part of the arbitrator," and that in such cases "evidence extrinsic to the arbitration itself must be presented to the trial court and findings are indeed appropriate."). Similarly, in addressing a petition to vacate an arbitration award, also based on a claim of arbitrator partiality, a Hawaii appellate court applied a clearly erroneous standard of review to the trial court's findings of fact. *Kay v. Kaiser Found. Health Plan, Inc.*, 194 P.3d 1181, 1186 (Haw. Ct. App. 2008).

¶27 This is also the approach in the federal courts in addressing applications of the Federal Arbitration Act.[7] *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 947-48 (1995). Addressing an issue of arbitrability, the U.S. Supreme Court stated:

> [R]eview of, for example, a district court decision confirming an arbitration award on the ground that the parties agreed to submit their dispute to arbitration, should proceed like review of any other district court decision

---

[6] There is a Wisconsin analog to the partiality basis for the challenge made in the Utah case, although that ground is not at issue in this appeal. As quoted *supra* in note 3, one ground to vacate an arbitration award in Wisconsin, under WIS. STAT. § 788.10(1)(b), is when "there was evident partiality or corruption" by an arbitrator.

[7] Our supreme court has treated as persuasive authority federal court interpretations of provisions in the Federal Arbitration Act that are the substantial equivalents of provisions in the Wisconsin Arbitration Act. *See, e.g.*, *DeBaker v. Shah*, 194 Wis. 2d 104, 113 n.4, 117 n.5, 533 N.W.2d 464 (1995).

finding an agreement between parties, *e.g.*, accepting findings of fact that are not "clearly erroneous" but deciding questions of law de novo.

*Id.*; *see also* ***Scandinavian Reinsurance Co. Ltd. v. Saint Paul Fire and Marine Ins. Co.***, 668 F.3d 60, 71 (2d Cir. 2012) ("'When reviewing a district court's decision to vacate an arbitration award, we review findings of fact for clear error and questions of law de novo.'" (quoted source omitted)).

¶28 Notably, this approach has been extended to the federal analog of the Wisconsin statutory basis for vacating an arbitration award that is at issue here. In applying 9 U.S.C. § 10(a)(4), which is the substantial equivalent to WIS. STAT. § 788.10(d), federal courts have reviewed "the district court's legal rulings de novo and its findings of fact for clear error."[8] *See* ***T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.***, 592 F.3d 329, 339, 342 (2d Cir. 2010) (involving claims under 9 U.S.C. § 10(a)(4) that the arbitrator acted in "manifest disregard of the law" in making a damages award and exceeded his powers by ordering corrections to errors in an initial award).

---

[8] Federal Arbitration Act, 9 U.S.C. § 10(a)(4), reflects a generally similar standard as WIS. STAT. § 788.10(d), providing:

> (a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
>
> ….
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

¶29 In sum, persuasive state and federal precedent recognizes a role for trial court fact finding, which is entitled to its traditional level of deference, in response to some categories of challenges to arbitration orders. *See **Legion Ins. Co. v. Insurance Gen. Agency, Inc.***, 822 F.2d 541, 542-43 (5th Cir. 1987) ("[S]ome motions challenging arbitration awards may require evidentiary hearings outside the scope of the pleadings and arbitration record.... Such matters as misconduct or bias of the arbitrators cannot be gauged on the face of the arbitral record alone."); *accord*, 2 DOMKE ON COMMERCIAL ARBITRATION § 38:12 (Jan. 2022 Update) ("A court may properly make findings of fact when faced with a claim of partiality by the arbitrator, as extrinsic evidence must be presented to the court to resolve the issue.").

¶30 We conclude that the shared rationale in all of this authority applies to the scenario here. The circuit court was presented with a potential basis to vacate the award that could not, in the words of ***Legion Insurance Co.***, "be gauged on the face of the arbitral record alone." Pertinent circumstances here include the fact that the sleeping issue was raised with the arbitrator before he made the award, there were no clear findings on this issue in the record of the arbitration, and the circuit court reasonably determined that there was a need for it to assess the credibility of potential witnesses to alleged sleeping or lack of sleeping. Further, the builder fails to develop an argument to the contrary. Instead, it simply relies on inapt authority that addresses the standard of review for legal rulings, and does not address our standard of review for properly made, material circuit court factual findings.

### B. Application Of Standard Of Review To Facts Found By Circuit Court

¶31    We now explain why we conclude that none of the circuit court's relevant findings of fact are contrary to "the great weight and clear preponderance of the evidence," and that "'the evidence would permit a reasonable person to make the same finding[s].'"  *See Royster-Clark, Inc.*, 290 Wis. 2d 264, ¶12 (quoted source omitted).

¶32    The circuit court relied heavily on its credibility findings, which are findings that we must sustain. *See Schultz*, 248 Wis. 2d 746, ¶32.  As summarized above, at least at points in his testimony the attorney for the builder clearly attempted to convey that he would have noticed the sleeping described by the homeowners if it had occurred and that he did not notice any such sleeping.  This could have provided a basis for findings by the court quite different from the ones it made.  However, the court was in the best position to assess credibility, and it found both that the gist of the attorney's credible submissions and testimony amounted to, "I didn't see it," and also that the submissions and testimony of the homeowners were credible in all respects.

¶33    It is the same with the circuit court's specific finding that the arbitrator "discounted the testimony of" the homeowners' expert because the arbitrator did not comprehend at least substantial aspects of that testimony "due to his drowsiness."  Taylor's testimony regarding the pattern of the arbitrator's sleeping and the testimony that was missed provided a basis for this finding.  The court was free to credit this testimony—even if, again, the court could have made different findings based on the testimony.  And, to state the obvious, it supports the court's findings on this topic that sleeping through testimony undoubtedly prevents the comprehension of that particular testimony, even if in a given case there may be ways for the arbitrator to learn the substance of missed testimony at other points in the arbitration proceedings.  Further, by reasonable inference an

arbitrator missing testimony by sleeping also can interfere with his or her comprehension of other evidence that relates to the missed testimony.

¶34 The builder provides nothing that could establish clear error in the circuit court's fact finding. At points in the builder's briefing, it simply ignores the court's findings, such as when it repeatedly states, "The arbitrator did his job," without attempting to come to grips with the circuit court's findings about sleeping and its effects on the award. The builder directs us to evidence from the arbitration proceedings that the arbitrator addressed each claim of damages proposed by the homeowners' expert and credited some of those claims in the award. This certainly demonstrates that the arbitrator was aware of the expert and his list of damages claims. The circuit court, which acknowledged this evidence in making it decision, could have weighed this evidence differently in making its findings. But the builder fails to explain why this evidence establishes clear error, as opposed to merely providing a basis for findings that the court could have but did not make. Separately, the builder points out that "there is no transcript of the arbitration proceeding," perhaps intending to suggest an insufficient record to support the court's findings, but this is beside the point because the circuit court heard relevant evidence.

¶35 The closest the builder comes to a direct argument of clear error in fact finding is to point to specific portions of the transcript in which Taylor testified in a qualified manner, or in which she admitted to a limited perception on a particular factual point. From these references, the builder argues that the circuit court was left with only "speculation or guesswork" as a factual record. This is a highly selective use of the record. It also ignores the simple fact that, in the judgment of a fact finder, witness credibility may be enhanced, not reduced, by testimony that includes qualifications and admissions of less than perfect

17

knowledge. As our summary above makes clear, the court had a basis to interpret the entirety of the evidence, including Taylor's testimony, as establishing that there was sleeping that was certain, extensive, and significant to the arbitrator's ability to render an award based on all relevant evidence and argument. Further, even in making this more direct argument, the builder fails to squarely address the findings that the court did make and to explain a basis on which we could conclude that any finding was clearly erroneous.

¶36 In addition, after the homeowners in their response brief on appeal defend the circuit court's relevant findings in multiple ways, such as by directing us to aspects of the testimony of the attorney for the builder, in reply the builder implicitly concedes these points by failing to address them. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to argument made in response brief may be taken as concession).

## II. Flawed Award Based On "Imperfect Execution"

### A. Legal Standards

¶37 In contrast to our review of a circuit court's material findings of fact in this context, discussed above, when we review the court's application of a legal standard to the facts in a challenge to an arbitration award this presents an issue of law that we review de novo. *See DeBaker v. Shah*, 194 Wis. 2d 104, 112, 533 N.W.2d 464 (1995); *Lukowski v. Dankert*, 184 Wis. 2d 142, 149, 515 N.W.2d 883 (1994).

¶38 "In reviewing an arbitration the courts are guided by the general statutory standards," contained in WIS. STAT. §§ 788.10 and 788.11, and "by the

standards developed at common law." ***Lukowski***, 184 Wis. 2d at 150-51. "If these general standards are not violated, the arbitrator's award should be confirmed by the trial court." ***Id.*** at 151.

¶39     As quoted in full *supra* at note 3, WIS. STAT. § 788.10 addresses statutory grounds requiring vacating an arbitration award. WISCONSIN STAT. § 788.11 addresses grounds requiring modifying an award, which is not at issue here. The homeowners' sole argument on appeal is that the arbitration award must be vacated under § 788.10(1)(d) and we limit our analysis to that provision.

¶40     In reviewing the circuit court's decision to vacate the award based on WIS. STAT. § 788.10(1)(d), we must be highly deferential to the results of the arbitration, as our supreme court has explained at length:

> The standard for our review of the arbitrator's decision is the same as that for the circuit court, and we review the arbitrator's decision without deference to the decision of the circuit court. The scope of the court's review is limited. We presume the arbitrator's decision is valid, and we disturb it only where invalidity is shown by clear and convincing evidence. Essentially the court's role is supervisory in nature—to insure that the parties receive what they bargained for when they agreed to resolve certain disputes through final and binding arbitration. Courts may not overturn an arbitrator's decision for "mere errors of fact or law, but only when perverse misconstruction or positive misconduct [is] plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy." The rationale for not vacating awards because of an error of fact or law is that, when parties have agreed to submit an issue to arbitration and have chosen the arbitrator, they have agreed to be bound by the arbitrator's judgment, whether correct or incorrect as a matter of fact or law.

***Madison Teachers Inc.***, 271 Wis. 2d 697, ¶9 (citations omitted). In a similar vein, our supreme court has stated, "Because the policy of this state is to foster arbitration as an alternative to litigation, arbitration awards are presumed to be

valid." ***Richco Structures v. Parkside Village, Inc.***, 82 Wis. 2d 547, 553, 263 N.W.2d 204 (1978).

¶41     The standard for proving that an award must be vacated "is met only upon a showing by the proponent that there exists clear and convincing evidence." *See **DeBaker***, 194 Wis. 2d at 117; ***Scherrer Constr. Co. v. Burlington Mem'l Hosp.***, 64 Wis. 2d 720, 735, 221 N.W.2d 855 (1974).

### B. Application Of Legal Standards To Facts Here

¶42     Applying these legal standards to the facts as found by the circuit court, which the builder has not shown to be clearly erroneous, we conclude that the homeowners have overcome the presumption of validity that an arbitral award enjoys, because the arbitrator "so imperfectly executed" his "powers" "that a mutual, final and definite award upon the subject matter submitted was not made." *See* WIS. STAT. § 788.10(1)(d).

¶43     The parties do not direct us to, and we are not aware of, Wisconsin authority or even potentially persuasive authority from another source that addresses a situation that closely resembles this one.  However, interpreting the language of WIS. STAT. § 788.10(1)(d), and taking into account the limited case law that has applied it (including under its prior numbering, WIS. STAT. § 298.10(1)(d)), we conclude that the homeowners have shown that the arbitrator failed to perform a fundamental duty required of him as an arbitrator, namely, to remain awake for what the circuit court found were "substantial parts" of the material evidence, in particular the testimony of the expert for the homeowners.

¶44     We begin by rejecting the builder's suggestion that the circuit court's decision was based on the opening, alternative phrase in WIS. STAT.

§ 788.10(1)(d), "[w]here the arbitrators exceeded their powers." The builder cites case law interpreting "exceeded powers" allegations, but these cases are irrelevant here. *See Scherrer Constr.*, 64 Wis. 2d at 725-26 (addressing argument that arbitrators "exceeded their powers" under provision then numbered WIS. STAT. § 298.10(1)(d) by misconstruing a construction contract and making an award based on a legal theory unsupported by the evidence). There is no possible argument that failing to consider material evidence due to sleeping constitutes an act that could *exceed* the arbitrator's powers. Instead, the issue here is whether the arbitrator "so imperfectly executed [his powers] that a mutual, final and definite award upon the subject matter submitted was not made."

¶45 We note that our supreme court has explained that the language in the current WIS. STAT. § 788.10(1)(d) "reflects the common-law rule that an award must be definite and certain and sufficiently detailed to finally settle the controversy." *McKenzie v. Warmka*, 81 Wis. 2d 591, 598-99, 603, 260 N.W.2d 752 (1978). Whatever value this proposition might have in other contexts, it does not appear to shed light on the meaning of the terms in the statute for current purposes. Further, the court in *McKenzie* explicitly relied on the reasoning in *Garstka* to complete its explanation and we now turn to *Garstka*.

¶46 In *Garstka*, the arbitrators in a construction contract dispute were assigned to decide two issues: the value of the materials furnished by the contractor and the value of the contractor's labor. *Garstka*, 37 Wis. 2d at 149. The arbitrators' award determined the value of the labor, but it failed to determine the value of the materials. *Id.* The court affirmed the circuit court's decision to vacate the award because the arbitrators performed only one half of their assigned duties, based on the application of the statute then numbered WIS. STAT. § 298.10(1)(d). *Garstka*, 37 Wis. 2d at 149-50.

¶47 The supreme court explained in *Garstka* that the award had to be vacated because the arbitrators "*failed to perform the duty placed upon them by the submission* which required them to determine the value of the materials furnished as well as the value of the labor," and also explained that the arbitrators "made no mere error of judgment upon a question of law or fact submitted but *entirely mistook their duty.*" *Id.* (emphasis added). "True, one must take arbitrators as they find them with their weaknesses and their frailties, but this rule does not include *a failure to perform their duty.*" *Id.* at 150 (emphasis added) (citation omitted). For these reasons, the court affirmed the application of the statute then numbered WIS. STAT. § 298.10(1)(d), because "the arbitrators so imperfectly executed their power that a final and definite award upon the subject matter submitted was not made." *Id.* at 150-51.

¶48 It is true that the type of failure at issue in *Garstka* differs from the type of failure found by the circuit court in this case. Part of the court's reasoning in *Garstka* was that the partial award "served no useful purpose and did not avoid a lawsuit which was the purpose of the submission" for arbitration, 37 Wis. 2d at 150, and that reasoning seems not to have a clear analog in the facts of this case. However, the court's essential interpretation of the language of the current WIS. STAT. § 788.10(1)(d) applies here: an omission by an arbitrator that deprives the parties of the benefit of execution of a fundamental duty assigned to the arbitrator through the mutual agreement of the parties can constitute such imperfect execution of an arbitrator's "powers" "that a mutual, final and definite award upon the subject matter submitted was not made."

¶49 Here, based on the facts found by the circuit court, the arbitrator failed to perform a fundamental duty that was assigned to him as the arbitrator: remain awake to consider the presentation of material evidence, most notably

22

significant portions of the testimony of the expert called by the homeowners. This was not a mere mistake of fact or law, which are generally insufficient to overcome the presumption of validity. Instead, the arbitrator's execution of the arbitral assignment was fundamentally flawed. The resulting award could not be considered "final and definite" due to this failure to fulfill a fundamental duty.

¶50 One necessary component of our analysis is that the circuit court made a finding, not shown to be clearly erroneous, that the homeowners showed that the arbitrator "discounted the testimony of" their expert because he did not comprehend it "due to his drowsiness." In a different case, for example, an arbitrator might be shown (either based on the record of the arbitration itself, on circuit court findings of fact, or on some combination of the two) to have slept during unimportant events. Or, the evidence might show that the arbitrator slept at times when significant and material evidence was presented to the arbitrator, but the missed evidence ended up being cumulative of evidence that was separately presented to the arbitrator when he or she was awake. In such cases, the imperfect execution standard set forth in WIS. STAT. § 788.10(1)(d) might not apply. As we have already explained, however, the circuit court's findings about materiality have support in the record.[9]

¶51 Our supreme court has explained that interpretations of WIS. STAT. § 788.10(1) must aim to "achieve the legislative objective of striking 'the proper

---

[9] For the same set of reasons, it does not assist the builder to cite *Hurn v. Macy's, Inc.*, 728 F. Appx 598, 599 (7th Cir. 2018), in which the court rejected a motion to vacate based on a claim that "the arbitrator fell asleep during the hearing," because "even if the arbitrator missed something, [the objecting party] does not say what that was." We have explained how the facts here are different.

balance between ensuring finality of arbitration awards and ensuring justice and fairness (and the appearance of justice and fairness).'" ***DeBaker***, 194 Wis. 2d at 114 (quoting ***Richco Structures***, 82 Wis. 2d at 560). We do not see how it could improperly tilt this balance for us to conclude here that the findings of the circuit court compel a conclusion that the parties were deprived of the benefit of execution of a fundamental duty assigned to the arbitrator, which required the court to vacate the award under § 788.10(1)(d).

¶52 The builder cites as persuasive authority a federal court of appeals decision, but that opinion highlights a major distinction that undermines the builder's position. *See **Flexible Mfg. Sys. Pty. Ltd. v. Super Prods. Corp.***, 86 F.3d 96, 99-100 (7th Cir. 1996). The distinction is between motions to vacate awards based on claims that arbitrators misconstrued documents or miscalculated damages, such as in ***Flexible Mfg. Sys.***, and the unusual situation here, in which the circuit court found that an arbitrator's sleeping was certain, extensive, and significant to his ability to render an award based on the material evidence.

¶53 Finally, regarding remedies, the builder does not argue that, if we affirm the substance of the circuit court's determination that WIS. STAT. § 788.10(1)(d) applies here, the homeowners are not entitled to what they request: affirmance of the rulings of the circuit court denying the builder's motion to confirm the award and granting the homeowners' motion to vacate, including the direction that the case be remanded for a new arbitration before a different arbitrator.

# CONCLUSION

¶54     For all these reasons, we affirm the rulings of the circuit court denying the builder's motion to confirm the award and granting the homeowners' motion to vacate the award.

*By the Court.*—Order affirmed.