COURT OF APPEALS
DECISION
DATED AND FILED

May 25, 2023

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1052**

**STATE OF WISCONSIN**

Cir. Ct. No. **2021CV304**

**IN COURT OF APPEALS
DISTRICT IV**

ERICK HALLICK,

    PETITIONER-RESPONDENT,

  V.

GREENPOINT ASSET MANAGEMENT II, LLC AND MICHAEL G. HULL,

    RESPONDENTS-APPELLANTS,

CHRYSALIS FINANCIAL LLC, CHRISTOPHER NOHL, GREENPOINT GLOBAL MITTELSTAND I, LLC, GREENPOINT REAL ESTATE DEVELOPMENT FUND, LLC, GREENPOINT FINE ART FUND, LLC, GREENPOINT ASSET MANAGEMENT, LLC, GREENPOINT ASSET MANAGEMENT IV, LLC, GREENPOINT ASSET MANAGEMENT V, LLC, BLUEPOINT INVESTMENT COUNSEL, LLC,

    RESPONDENTS.

      APPEAL from an order of the circuit court for Dane County: VALERIE BAILEY-RIHN, Judge. *Affirmed*.

Before Kloppenburg, Fitzpatrick, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM. Erick J. Hallick ("Hallick") entered into an agreement ("Settlement Agreement" or "Agreement") that resolved Hallick's claims against the settling entities which were pending in prior arbitration and litigation.[1]  The Settlement Agreement provided that an "initial payment" and a "final payment" totaling $14,000,000 be made to Hallick.  When the final payment was not made, Hallick returned to arbitration to enforce the Settlement Agreement. In the ensuing arbitration, Hallick and the participating Respondents disputed whether the Settlement Agreement imposes liability for the final payment due Hallick on all of the Respondents or only one specific Respondent; the dispute matters because that one Respondent had declared bankruptcy and its assets were not available to satisfy the final payment.  Also in the ensuing arbitration, some of the participating Respondents moved to amend their response to Hallick's Statement of Claim to assert counterclaims alleging that Hallick breached the Settlement Agreement and his duty of good faith and fair dealing.

¶2      The arbitrator issued a written decision and order concluding that, based on the arbitrator's interpretation of the Settlement Agreement, the Agreement imposes joint and several liability on all of the Respondents; the

---

[1] In this opinion, we refer to the entities against which Hallick asserted his claims and which signed the Settlement Agreement by the term used in the Agreement: "the Respondents." Not all of the Respondents participated in the ensuing arbitration and the instant litigation. For ease of reading, we will sometimes refer to the Respondents that participated in the ensuing arbitration and made the arguments addressed in this appeal as "the participating Respondents."

arbitrator also denied the motion to amend. The arbitrator granted an award to Hallick in the amount of $13,625,000, which was the remaining amount of the final payment due under the Settlement Agreement.

¶3 Hallick sought confirmation of the arbitration award in the circuit court. Some of the participating Respondents objected and moved to vacate the arbitration award. The circuit court denied the motions to vacate and confirmed the arbitration award. Two of the participating Respondents, Greenpoint Asset Management II, LLC and Michael G. Hull (collectively, "Greenpoint II"), appeal.[2]

¶4 On appeal, Greenpoint II makes two arguments: (1) the arbitrator exceeded his powers when he manifestly disregarded Wisconsin contract law in interpreting the Settlement Agreement to impose joint and several liability on all of the Respondents; and (2) the arbitrator imperfectly executed his powers when he denied Greenpoint II's motion to amend its response to assert counterclaims against Hallick.

¶5 We conclude that the arbitrator did not exceed his powers by manifestly disregarding Wisconsin contract law because there is a reasonable basis in the Settlement Agreement for his interpretation of the Agreement. We also conclude that the arbitrator did not imperfectly execute his powers when he denied the motion to amend based on the arbitrator's explanation that the counterclaims are not relevant to the purpose of the arbitration, which is to enforce the Agreement as the arbitrator interpreted it. Accordingly, we affirm the circuit court.

---

[2] Two additional appellants, Chrysalis Financial, LLC and Christopher Nohl, were voluntarily dismissed on notice that they had settled their dispute with Hallick.

**BACKGROUND**

¶6   The following undisputed facts are taken from the arbitration decision and order.

¶7   In April 2019, Hallick entered into a Settlement Agreement with a number of Respondents, including Greenpoint II, to resolve all of Hallick's claims asserted against the Respondents pending in prior arbitration and litigation, with the exception of certain claims that were explicitly carved out of the Agreement and that are not at issue in this appeal.

¶8   The Settlement Agreement resolved Hallick's claims for a total of $14,000,000. The total included an initial payment of $375,000 to be made shortly after the execution of the Settlement Agreement, and a final payment of $13,625,000 to be made by July 21, 2019. The initial payment was made, but the final payment was not. We will present additional details regarding the contents of the Settlement Agreement in the discussion that follows.

¶9   In the summer of 2019, Hallick returned to arbitration to enforce the Settlement Agreement and invoked a provision in the Agreement calling for an in-kind distribution of assets in the possession of one of the Respondents, Greenpoint Tactical Income Fund ("GTIF"), to satisfy the final payment. These procedures "came to a halt" when GTIF filed for bankruptcy protection in October 2019.

¶10   In September 2020, Hallick filed in the arbitration proceeding a Statement of Claim to enforce the Settlement Agreement against all of the Respondents ("the named Respondents"), except GTIF and another Respondent

that were both in bankruptcy.[3] The Statement of Claim alleged that the named Respondents breached the Settlement Agreement by not making the final payment and that each named Respondent is jointly and severally liable for the amount remaining unpaid. The Respondents do not dispute that Hallick's claim was properly before the arbitrator.

¶11 Two of the named Respondents settled with Hallick prior to the arbitration decision and the claims against them were dismissed. Five of the named Respondents defaulted when they did not appear before the arbitrator. The remaining named Respondents (as noted above, "the participating Respondents") formed two separate groups and each group responded to Hallick's claim, denying liability.

¶12 Pertinent to this appeal, the arbitrator addressed two issues: (1) "the liability, if any, of the [Respondents] under the Settlement Agreement" for the amount remaining unpaid to Hallick; and (2) whether one group of the participating Respondents should be allowed to amend its response in order to assert counterclaims alleging that Hallick breached the Settlement Agreement and his duty of good faith and fair dealing.[4]

¶13 As to the first issue, as we now summarize, the arbitrator concluded that "each of the [R]espondents [that signed the Settlement Agreement] is jointly

---

[3] The Respondent other than GTIF that was in bankruptcy does not matter to the issues on appeal; therefore, we do not mention that Respondent again.

[4] The arbitrator also addressed, and rejected, the participating Respondents' arguments that the arbitration proceedings should be stayed pending GTIF's bankruptcy because GTIF is a necessary party, and that the participating Respondents should be excused from performance because GTIF's declaration of bankruptcy frustrated the purpose of the Settlement Agreement. Greenpoint II does not make these arguments on appeal and we do not address them further.

and severally liable for the $13,625,000 obligation each agreed to assume by entering into the Agreement. They have each breached the Agreement by not paying." As to the second issue, the arbitrator denied the motion to amend because the subject of the proposed counterclaims has "nothing to do with the dispute between the parties to this arbitration [and, therefore,] the interests of justice are not served by allowing the amendment."

¶14 Hallick petitioned the Dane County Circuit Court to confirm the arbitration award. Some of the participating Respondents objected to the confirmation and moved to vacate the arbitration award.

¶15 After briefing and oral argument, the circuit court denied the motions to vacate the arbitration award and confirmed the award. Greenpoint II appeals.

## DISCUSSION

¶16 Greenpoint II seeks to vacate the arbitrator's award under WIS. STAT. § 788.10(1)(d) (2021-22), which provides that "the court … must make an order vacating the [arbitration] award … [w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."[5] As stated, Greenpoint II argues that: (1) the arbitrator exceeded his powers when he "manifestly disregarded Wisconsin contract law" in interpreting the Settlement Agreement;

---

[5] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

and (2) the arbitrator imperfectly executed his powers when he denied the motion to amend to assert counterclaims.

¶17    Whether an arbitration decision must be vacated presents a question of law that the court reviews de novo. ***Orlowski v. State Farm Mut. Auto. Ins. Co.***, 2012 WI 21, ¶14, 339 Wis. 2d 1, 810 N.W.2d 775.    We address each of Greenpoint II's arguments in turn.

### I.  The Arbitrator Did Not Exceed His Powers.

¶18    Arbitrators exceed their powers through "perverse misconstruction, positive misconduct, a manifest disregard of the law, or when the award is illegal or in violation of strong public policy." ***Baldwin-Woodville Area Sch. Dist. v. West Cent. Educ. Ass'n-Baldwin Woodville Unit***, 2009 WI 51, ¶21, 317 Wis. 2d 691, 766 N.W.2d 591 (quoted source omitted).    Greenpoint II argues that the arbitrator "manifestly deviated from applicable Wisconsin law regarding the interpretation of contracts" when he interpreted the Settlement Agreement as providing that all of the Respondents that signed the Agreement are jointly and severally liable for the $13,625,000 balance remaining after Hallick was paid the initial $375,000.

### A.  Applicable Standard of Review and Legal Principles

¶19    Our review of an arbitrator's award under WIS. STAT. § 788.10(1)(d) is highly deferential, as this summary of Wisconsin case law explains:

> The standard for our review of the arbitrator's decision is the same as that for the circuit court, and we review the arbitrator's decision without deference to the decision of the circuit court.  The scope of the court's review is limited.  We presume the arbitrator's decision is valid, and we disturb it only where invalidity is shown by clear and convincing evidence.  Essentially the court's role

7

> is supervisory in nature—to insure that the parties receive what they bargained for when they agreed to resolve certain disputes through final and binding arbitration. *Courts may not overturn an arbitrator's decision for "mere errors of fact or law,* but only when perverse misconstruction or positive misconduct [is] plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy." *The rationale for not vacating awards because of an error of fact or law is that, when parties have agreed to submit an issue to arbitration and have chosen the arbitrator, they have agreed to be bound by the arbitrator's judgment, whether correct or incorrect as a matter of fact or law.*

*Madison Teachers Inc. v. Madison Metro. Sch. Dist.*, 2004 WI App 54, ¶9, 271 Wis. 2d 697, 678 N.W.2d 311 (citations omitted) (emphasis added).

¶20 In Wisconsin, "a settlement agreement is a contract and is governed by the traditional requirements for contracts." *American Nat. Prop. & Cas. Co. v. Nersesian*, 2004 WI App 215, ¶14, 277 Wis. 2d 430, 689 N.W.2d 922. "When construing contracts … [the] goal is to ascertain the true intentions of the parties as expressed by the contractual language." *Town Bank v. City Real Est. Dev., LLC*, 2010 WI 134, ¶33, 330 Wis. 2d 340, 793 N.W.2d 476 (quoted source omitted). "[T]he best indication of the parties' intent is the language of the contract itself." *Id.*

¶21 "An arbitrator obtains authority only from the contract of the parties and therefore is confined to the interpretation of that contract and cannot ignore that contract when making an award." *Lukowski v. Dankert*, 184 Wis. 2d 142, 152, 515 N.W.2d 883 (1994). As stated, in reviewing the arbitrator's construction of the contract, we do not determine which construction—the arbitrator's or the appellant's—is more reasonable. *Baldwin-Woodville*, 317 Wis. 2d 691, ¶22; *see also Lukowski*, 184 Wis. 2d at 153 ("[T]his court will not upset the award even if this court might have decided the matter differently."). Instead, we will uphold the

award if there is "some reasonable foundation for the interpretation of the contract offered in the decision." *Id.* In other words, "[t]he law is not violated, nor is the authority derived from the contract exceeded, so long as there is a rational basis for the" arbitrator's interpretation of the contract. *Id.*

### B. The Settlement Agreement

¶22 The relevant provisions in the Settlement Agreement are as follows. The Settlement Agreement begins with the following paragraph:

> This Settlement Agreement (this "Agreement") is entered into as of the 13th April, 2019 by and among Claimant Erick J. Hallick ("Claimant" or "Hallick") and Respondents Greenpoint Tactical Income Fund LLC, Greenpoint Fine Art Fund LLC, Greenpoint Real Estate Development Fund LLC, Greenpoint Global Mittelstand Fund I LLC, Greenpoint Asset Management LLC, Greenpoint Asset Management II LLC, Greenpoint Asset Management IV LLC, Greenpoint Asset Management V LLC, Chrysalis Financial LLC, GP Rare Earth Trading Account LLC, Jennifer Weis[s]bach Art Advisory LLC, Bluepoint Investment Counsel LLC, Michael G. Hull, Patrick F. Hull, Christopher Nohl, and Jennifer Weissbach (together the "Respondents"), collectively Claimant and Respondents are "the Parties" or, singularly, in context, "a Party."

¶23 The Settlement Agreement continues with four "Recitals," which are "specifically incorporated into th[e] Agreement." Two of the recitals relate that Hallick and the Respondents were involved in arbitration and engaged in mediation. The third recital states:

> C. Respondent Greenpoint Tactical Income Fund LLC ("GTIF") and its managers, Chrysalis Financial LLC and Greenpoint Asset Management II LLC, are currently in negotiations to sell certain gem and mineral assets held by the GTIF, (the "Potential Sales"), which, if completed, will be sufficient to pay Hallick $14,000,000 pursuant to the terms below.

The fourth recital states, "The purpose of this Settlement is to resolve all claims asserted by Hallick against Respondents except those claims that have been explicitly carved out." As noted above, the claims carved out are not germane to the issues on appeal.

¶24 The Settlement Agreement continues with a section titled "Agreement." This section starts with the following payment provisions:

> 1. Initial Payment. Respondents agree to pay Hallick $375,000, (the "Initial Payment"), by check or wired funds on or before the later of April 21, 2019 or twenty (20) days after the execution of this Agreement.

> 2. Final Payment. Respondents agree to pay Hallick $13,625,000, (the "Final Payment"), by check or wired funds, on or before July 21, 2019, ("the Payment Period"). The Parties agree that Hallick shall have the option of extending the Payment Period in his sole discretion. Greenpoint Tactical Income Fund LLC and its managers shall keep Hallick apprised of the status of any potential and completed sales of gems and minerals.

¶25 Paragraph three, titled "In-Kind Distribution," provides: "In the event that Respondents do not make the Final Payment within the Payment Period … Hallick shall be entitled to take possession of and title to $15,000,000 worth of the gem and/or mineral assets of the GTIF, less any payments previously made pursuant to this Agreement, including the Initial Payment, (the 'In-Kind Distribution')." The paragraph then describes the process by which Hallick can "effectuate" the in-kind distribution, addressing details such as appraisal, valuation, and timing.

¶26 Paragraph seven is titled "Representation and Warranty" and states:

> Respondents GTIF, Chrysalis Financial LLC, Christopher Nohl, and Greenpoint Asset Management II LLC represent and warrant that GTIF will retain sufficient assets to cover the amounts due to Hallick under this

10

> Agreement. GTIF, Chrysalis Financial LLC, Christopher Nohl, and Greenpoint Asset Management II LLC further represent and warrant that if the Potential Sales are completed and the GTIF has sufficient liquidity considering its other obligations and liabilities, they will pay Hallick the Final Payment due hereunder with said proceeds. Even if GTIF lacks sufficient funds to make the entirety of the Final Payment, it will pay Hallick as much of the Final Payment as is reasonably practicable in light of its available liquidity.

The paragraph further specifies what activities GTIF may or may not engage in to ensure it pays Hallick as much of the final payment as possible.

¶27　Paragraph eight, titled "Release of Claims," states that, except for certain claims that are not germane to the issues on appeal, "Claimant and Respondents fully and forever discharge each other … from any and all claims and causes of action … that are or could have been asserted in, or relate to or arise out of the allegations or facts in the Litigation[.]"

¶28　Paragraph nineteen, titled "Enforcement," provides that "this Settlement Agreement shall be enforceable by the arbitrator, Hon. John Markson."

¶29　The Settlement Agreement ends with signatures by Hallick and all of the Respondents.

### C. The Arbitrator's Award

¶30　As stated, the arbitrator interpreted the Settlement Agreement as providing that all of the Respondents, not only GTIF, are jointly and severally responsible for the final payment due Hallick.

¶31　The arbitrator began by stating the applicable legal principles, including that the Settlement Agreement is a contract and that resolving the dispute involves ascertaining the intent of the signatories to the Agreement from

11

the words in the contract. The arbitrator determined that the Agreement is unambiguous and, thus, is to be construed without the use of extrinsic evidence.

¶32 The arbitrator then determined that paragraph two of the Settlement Agreement "clear[ly]" states that each of the Respondents named in the Agreement agrees to pay Hallick $13,625,000. The arbitrator based this determination on the words in paragraph two—"Respondents agree to pay Hallick $13,625,000 (the 'Final Payment'), by check or wired funds, on or before July 21, 2019, ('the Payment Period')."—and on the definition of "Respondents" in paragraph one as including all of the signatories to the Agreement against which Hallick had asserted claims. The arbitrator reasoned that to interpret the Settlement Agreement as making GTIF solely responsible for the final payment would require ignoring the language in paragraph two and render it meaningless, and would render paragraph two and the signatures of all of the other Respondents superfluous.

¶33 The arbitrator explained that none of the paragraphs specifically referencing GTIF point to a different interpretation. The arbitrator noted that the recital that refers to GTIF's ongoing negotiations to sell assets states what may be a historical fact and the hope that the negotiations would succeed and furnish the funds to pay Hallick. However, the arbitrator found no language in the recital that limits the Respondents' obligation to pay under paragraph two "to whatever GTIF may realize from the sale of the assets."

¶34 The arbitrator noted that the paragraphs describing the in-kind distribution similarly reflect the hope that GTIF would make the final payment, but explained that describing one "path" to that payment "does not define the obligations of the parties to the Agreement." According to the arbitrator, these

paragraphs state only that Hallick was entitled to an in-kind distribution if he chose that path, not that he was entitled to an in-kind distribution if the final payment was not made. Consistent with the Agreement, when Hallick tried to take that path but was "blocked" when GTIF declared bankruptcy, he was "now taking another path by returning to paragraph [two]." As for the warranty paragraph providing measures to protect GTIF's ability to pay Hallick, the arbitrator noted that the participating Respondents failed to explain "how taking steps to protect one party's ability to pay lets the others off the hook when they've agreed to pay, as they did in paragraph [two]."

¶35 The arbitrator explained how his interpretation "gives effect to" and "harmonizes all the provisions" pointed to by the participating Respondents. Specifically:

> Each of the Respondents is responsible for the payment of $13,625,000, as paragraph [two] says. At the same time GTIF had assets it was trying to sell to garner an amount sufficient to pay Mr. Hallick (Recital C). If it could not sell them within the Payment Period, paragraph [three] provides that Mr. Hallick then "shall be entitled to take possession of and title to $15,000,000 worth of" the assets. That paragraph and the next one, paragraph [four], go on to prescribe a process to effectuate that in-kind distribution, should Mr. Hallick elect that process. And throughout it all, the provisions outlined in paragraph [seven] are in place to provide some protection from undermining GTIF's ability to pay.

The arbitrator reasoned that, if only GTIF is liable for making the final payment to Hallick, then nothing is required by the Respondents other than GTIF and there is no reason for them to be signatories to the Agreement.

¶36 Finally, the arbitrator considered what liability to impose consistent with his interpretation that all of the Respondents agreed to pay Hallick the

amount due him after the initial payment was made. The arbitrator concluded that, even though the Settlement Agreement does not use the exact words "joint and several liability," the Agreement created a joint and several obligation when all of the Respondents agreed to pay Hallick. The arbitrator recited the rule for joint and several liability as stated in the "Restatement (Second) of Contracts, sec. 289," as providing that "[w]here two or more parties to a contract promise the same performance to the same promisee, each is bound for the whole performance thereof, whether his duty is joint, several, or joint and several." The arbitrator noted that the rule is not inconsistent with Wisconsin law and applied the rule to conclude that "each of the [R]espondents is jointly and severally liable for the $13,625,000 obligation each agreed to assume by entering into the Agreement."

## D. Analysis

¶37 Greenpoint II acknowledges that the arbitrator properly recited the applicable law but argues that he disregarded that law in interpreting the language of the Settlement Agreement. However, as the arbitrator explained, he gave meaning to all of the relevant provisions in the Agreement when he determined, based on the language in those provisions, that: (1) the provisions specifically referencing the Respondents require that they will make the payment due Hallick; and (2) the provisions specifically referencing GTIF describe alternative paths for making that payment that may have been preferred but were not exclusive and did not relieve the other Respondents of the liability for making the payment that they agreed to. Accordingly, we conclude that there is a reasonable basis in the Agreement for the arbitrator's interpretation and, therefore, the arbitrator did not exceed his powers in reaching that interpretation. We next explain why we reject Greenpoint II's somewhat overlapping arguments to the contrary.

14

¶38 Greenpoint II argues that the arbitrator's interpretation improperly put too much weight on paragraph two of the Settlement Agreement, rendered certain provisions superfluous, and disregarded the Agreement's failure to use the term "joint and several liability." However, as we have summarized above, the arbitrator explained why he rejected these same arguments. Moreover, as to the Agreement's failure to use the term "joint and several liability," Hallick cites to case law supporting the rule relied on by the arbitrator as to this issue, and Greenpoint II does not challenge that case law in its reply brief. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (appellant's failure to respond in reply brief to an argument made in response brief may be taken as a concession). Essentially, these are arguments that the arbitrator applied contract law differently from how Greenpoint II would apply it to reach an interpretation different from the one that Greenpoint II would reach. These are not arguments that the arbitrator manifestly disregarded contract law. We do not upset arbitration awards when a party simply disagrees with the arbitrator's interpretation or argues that a different interpretation is better. See *Baldwin-Woodville*, 317 Wis. 2d 691, ¶22 (In reviewing an arbitrator's award, "we do not determine which construction—the arbitrator's or the [appellant's]—is more reasonable.").

¶39 Greenpoint II argues that the payment terms in the Settlement Agreement focus only on the assets of GTIF, thus reflecting the "principal purpose" of the agreement and "overarching intent" of the signatories to the agreement as being to make the final payment to Hallick solely based on GTIF's assets. However, the arbitrator explained that the signatories' inclusion of provisions in the contract specifying where they hoped or preferred the final payment will come from does not make that source of the payment the sole

remedy, given that the signatories also included the provision stating that all of the Respondents agreed to make the final payment to Hallick.

¶40 Greenpoint II's argument appears to be that contract law requires that a contract be interpreted to relieve a party from liability for a payment that it agrees to make when the contract does not specify how the party will make that payment; i.e., because the Settlement Agreement does not reference the other Respondents' assets, the Respondents' agreement to pay has no meaning. First, this argument ignores the language in paragraph two specifying that the Respondents shall make the final payment "by check or wired funds." Second, Greenpoint II cites no law supporting this general proposition. Moreover, the arbitrator explained that such an interpretation of the Settlement Agreement would render superfluous both the paragraph stating the non-GTIF Respondents' agreement to pay and their signatures to the Agreement. Greenpoint II points to no language in the Agreement that limits Hallick to pursuing only GTIF's assets. This failure defeats Greenpoint II's argument that there is no reasonable foundation for the arbitrator's interpretation that all of the Respondents are liable independent of the availability of GTIF's assets.

¶41 In a similar vein, Greenpoint II argues that the arbitrator misapplied contract law by failing to construe the Settlement Agreement's detailed provisions pertaining to the process for effectuating payment via GTIF's assets, as requiring that the GTIF-assets-based path to payment is the exclusive path. However, the arbitrator reasonably explained why he rejected the "exclusive path" interpretation. Because the arbitrator's interpretation to the contrary has a reasonable foundation in the Agreement, Greenpoint II's assertion of error does not show a manifest disregard of contract law.

¶42 In sum, we conclude that there is a reasonable basis in the Settlement Agreement for the arbitrator's interpretation to impose joint and several liability on all of the Respondents. Accordingly, Greenpoint II's argument that the arbitrator exceeded his powers in reaching that interpretation fails.

## II. The Arbitrator Did Not Imperfectly Execute His Powers.

¶43 Greenpoint II argues that the arbitrator "so imperfectly executed [his powers] that a mutual, final and definite award upon the subject matter submitted was not made," when he denied Greenpoint II's motion to amend its response to assert counterclaims against Hallick. *See* WIS. STAT. § 788.10(1)(d).

¶44 Arbitrators imperfectly execute their powers when they "fail[] to perform the duty placed upon them by the submission" of the subject matter in arbitration. *Loren Imhoff Homebuilder, Inc. v. Taylor*, 2022 WI App 14, ¶47, 401 Wis. 2d 510, 973 N.W.2d 836, (quoting *Garstka v. Russo*, 37 Wis. 2d 146, 149–50, 154 N.W.2d 286 (1967)).[6] "When a matter is submitted to arbitrators and a final and definite award covering all the subject matter submitted is not made, the arbitration has failed to serve its purpose and should not be accepted." *Garstka*, 37 Wis. 2d at 150 (concluding that, when the arbitrators in a contract dispute were assigned to decide two issues and decided only one of the two issues in the award, the arbitrators had imperfectly executed their powers in violation of the statute).

---

[6] *Garstka v. Russo*, 37 Wis. 2d 146, 149–50, 154 N.W.2d 286 (1967) addressed the application of WIS. STAT. § 298.10(1)(d) (1977-1978), which was the previous numbering for WIS. STAT. § 788.10(1)(d) and worded identically.

17

¶45 Here, Greenpoint II alleged that Hallick breached the Settlement Agreement and his duty of good faith and fair dealing when he engaged in ex parte communications with the appraiser contrary to the Agreement. Greenpoint II further alleged that those communications resulted in a reduced valuation of GTIF's assets that limited GTIF's ability to realize the fair market value of its assets and adversely affected GTIF's ability to satisfy the Final Payment, through either the sale of those assets or Hallick's taking possession of those assets.[7] The arbitrator accepted Greenpoint II's allegations as true for the purpose of deciding whether to grant the motion to amend. The arbitrator concluded that the subject of the proposed counterclaims has "nothing to do with the dispute between the parties to this arbitration [and, therefore,] the interests of justice are not served by allowing the amendment."

¶46 In explaining his reasoning, the arbitrator clarified that the purpose of the Settlement Agreement, as stated in Recital D and paragraph two of the Agreement, is to settle Hallick's claims against all of the Respondents that were in the prior arbitration and litigation by paying Hallick. The arbitrator further clarified that the issue to be decided in this arbitration proceeding, which was initiated by Hallick to enforce the Settlement Agreement, is the liability of the non-GTIF Respondents under the Agreement. The arbitrator stated that Hallick's

---

[7] We generally refer to the two mechanisms of payment based on GTIF's assets referenced in the Settlement Agreement—the potential sale of the assets and Hallick's taking possession of the assets through the in-kind distribution—as "the disposition of GTIF's assets." As implicitly recognized by Greenpoint II, it is evident from the arbitrator's discussion taken as a whole, that the arbitrator's repeated references to the effect of Hallick's communications on the mechanism involving the in-kind distribution of GTIF's assets to satisfy the final payment due Hallick implicitly extended to the potential sale of the assets contemplated in one of the recitals. Both aspects of the Settlement Agreement concern the one path of making the final payment to Hallick based on the disposition of GTIF's assets, and it is that path that is the focus of the arbitrator's explanation of his decision denying the motion to amend.

18

alleged breach of the appraisal provision would only be relevant to the task of enforcing the Settlement Agreement if the arbitrator were to conclude that the alleged breach was so significant that it would destroy the essential purpose of the Agreement and excuse the non-GTIF Respondents' performance under the Agreement. The arbitrator explained that, because the alleged breach based on the ex parte appraisal communications concerns only one non-exclusive aspect of the Agreement (payment based on the disposition of GTIF's assets), the alleged breach has "nothing to do with the purpose of the [Agreement—settling the claims of all of the Respondents by paying Hallick], much less operate[s] to destroy that purpose." The arbitrator also explained that the second counterclaim, that Hallick breached his duty of good faith and fair dealing, would similarly not excuse the Respondents' obligations and would only concern the same non-exclusive aspect that does not bear on the purpose of the Settlement Agreement or the task of enforcing it.

¶47 As further explained by the arbitrator, Hallick's alleged interference with the appraisal process concerns one path to making the final payment based on the disposition of GTIF's assets, but has no bearing on the Respondents' agreement to pay Hallick separate from the disposition of GTIF's assets. The arbitrator stated that Hallick's alleged communications with the appraiser might at most affect the path for payment based on the disposition of GTF's assets, which is but one path "by which the essential object of the Agreement—settling the case by paying Mr. Hallick—might be satisfied. It is not itself the object of the Agreement." Given that purpose, the issue before the arbitrator was "Hallick's right, if any, under the Agreement, to pursue the other [R]espondents for the amount he is owed under the Settlement Agreement" under the other path stated in

the Agreement. The arbitrator concluded that the proposed counterclaims have nothing to do with that issue and, therefore, denied the motion to amend.

¶48 We conclude that the arbitrator properly denied Greenpoint II's motion to amend on the basis that the counterclaims are not relevant to the purpose of the arbitration, which was to enforce Hallick's claims under the Settlement Agreement. Specifically, consistent with the arbitrator's interpretation of the Agreement, the counterclaims concern only one path, based on the disposition of GTIF's assets, to making the final payment due Hallick under the Agreement. The counterclaims do not relate to the path chosen by Hallick as provided by the Agreement, payment by all of the other Respondents. Consequently, denying Greenpoint II's motion to amend to assert the counterclaims did not prevent the arbitrator from making "a final and definite award covering all the subject matter submitted" and did not prevent the arbitration from "serv[ing] its purpose." *See Gartska*, 37 Wis. 2d at 150. Accordingly, the arbitrator did not imperfectly execute his powers when he denied Greenpoint II's motion to amend to assert the counterclaims.

¶49 Greenpoint II's argument on appeal essentially reiterates its argument regarding the interpretation of the Settlement Agreement, that there is only one anticipated outcome from the contract, payment by GTIF based on the disposition of its assets, and therefore Hallick's alleged interference with the value of GTIF's assets constituted a material breach to the essential object of the Settlement Agreement. However, this argument, which amounts simply to the argument that the counterclaims are critical to the Agreement as Greenpoint II interprets it, fails because the arbitrator rejected that interpretation and we have rejected Greenpoint II's challenge to his interpretation.

20

¶50 To repeat, the arbitrator's award clearly states his conclusion that, under the Agreement, the disposition of GTIF's assets does not provide the sole path for satisfying the final payment due Hallick. Thus, these counterclaims concerning only the appraisal and valuation of GTIF's assets are not relevant to the other path for payment provided in the Settlement Agreement, namely all of the Respondents' agreement to make that payment regardless of the availability of GTIF's assets. As Greenpoint II appears to concede (stating, in its reply brief, that "[t]he question before the Arbitrator was whether [Hallick] was entitled to recover a judgment against [Greenpoint II]"), it is this other path that Hallick asserted in seeking to enforce the Agreement and it is whether Hallick is entitled to that path under the Agreement that the arbitrator was tasked with deciding.

¶51 In sum, in explicitly addressing Greenpoint II's counterclaims and explaining why the counterclaims do not bear on the ultimate conclusion the arbitrator was tasked with making, which is whether all of the Respondents are liable for the final payment due Hallick, the arbitrator fulfilled his entire duty under the Settlement Agreement by rendering "a mutual, final and definite award upon the subject matter." *See* WIS. STAT. § 788.10(1)(d). Thus, the arbitrator did not imperfectly execute his powers.

## CONCLUSION

¶52 For the reasons stated above, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

21